**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, | CIVIL ACTION NO. 4:18-cv-768-ALM |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| HISENSE CO. LTD., et al., | |
| Defendants. | |

**AMERICAN PATENTS' OPPOSITION TO HISENSE CO., LTD. AND GUIYANG HISENSE ELECTRONICS CO., LTD.'S MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(5), AND 12(b)(6)**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.    LEGAL STANDARDS ........................................................................................2

III.  THIS COURT HAS PERSONAL JURISDICTION OVER THE HISENSE
      MOVANTS ..........................................................................................................3

    A.    This Court Has Specific Jurisdiction Over a Defendant Who Puts the Accused
          Products Into the Stream of Commerce Knowing They Will Be Sold in Texas ............ 3

    B.    The Hisense Movants Knowingly Participate in a Distribution Chain That
          Results in the Sale of the Accused Products in Texas ...................................... 5

        1.    Hisense Co. is Part of the Hisense U.S. Distribution Chain ........................................ 7

        2.    Guiyang Hisense is Part of the Hisense U.S. Distribution Chain ................................ 9

    C.    The Hisense Defendants' Operation as a Single Entity Supports Jurisdiction
          Here ................................................................................................ 10

    D.    Hisense's Cited Cases Are Easily Distinguished ......................................... 11

    E.    Trying American Patents' Claims Against the Hisense Movants in This Court
          Does Not Offend Traditional Notions of Fair Play and Substantial Justice .................. 12

    F.    Alternatively, Jurisdiction Is Proper Under Rule 4(k)(2) ................................ 14

    G.    Alternatively, Jurisdictional Discovery Is Warranted .................................... 14

IV.  SUBSTITUTED SERVICE ON THE TEXAS SECRETARY OF STATE
      CONSTITUTED PROPER SERVICE ON THE HISENSE MOVANTS .........................15

    A.    Texas Law Provides for Substituted Service in These Circumstances ......................... 15

    B.    The Hague Convention Is Not Implicated by Substituted Service ................................ 17

    C.    Alternatively, The Court Should Permit Service by Alternate Means .......................... 19

V.   AMERICAN PATENTS SUFFICIENTLY PLEADED INFRINGEMENT
      AGAINST THE HISENSE MOVANTS ...............................................................20

    A.    American Patents' Infringement Allegations Meet the Pleading Requirements ............ 20

    B.    The Hisense Movants' Denials Are Irrelevant to Their Motion to Dismiss ................. 22

    C.    American Patents Adequately Alleged Infringement by Each Hisense Movant .......... 22

    D.    The Complaint's Allegations of Indirect Infringement Meet the Pleading
          Requirements ..................................................................................... 24

    E.    The Complaint's Allegations of Willfulness Meet the Pleading Requirements ............ 27

        1.    American Patents Plausibly Alleged That Hisense Intentionally Infringed .............. 27

        2.    Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness .................... 29

i

3.    Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here............. 29

VI.  IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED...................................30

VII. CONCLUSION ............................................................................................................31

## I.    INTRODUCTION

American Patents' original complaint in this case alleged that Hisense Co., Ltd.

("Hisense Co.") and Guiyang Hisense Electronics Co., Ltd. ("Guiyang Hisense") (collectively,

"the Hisense Movants") infringed five patents.[1] The Hisense Movants seek to dismiss the

complaint for lack of personal jurisdiction, for improper service, for failure to state a claim of

direct and indirect infringement, and for failure to state a claim of willful infringement.

The Hisense Movants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2)

should be denied.  Although they deny any direct activities within the U.S., Movants do not

dispute that they place the accused products into established distribution channels for sale in

Texas.  This fact alone makes the Hisense Movants subject to this Court's specific jurisdiction

under the stream of commerce theory, as courts have repeatedly recognized when faced with

nearly identical denials from similarly situated foreign defendants.

As to the Hisense Movants' motion to dismiss under Federal Rule of Civil Procedure

12(b)(5), the motion should be denied because the Hisense Movants were properly served within

the United States.  Hisense Co. and Guiyang Hisense, both nonresidents of Texas, do business in

Texas but do not maintain a Texas registered agent, and this lawsuit arises out of the business

done in Texas.  Accordingly, American Patents LLC properly served the Hisense Movants by

substituted service on the Secretary of State of Texas.  And because the Texas Secretary of State

is an agent for receiving service on behalf of Hisense Co. and Guiyang Hisense, service was

completed in the United States; the Hague convention simply does not apply.

Hisense's challenge to American Patents' direct and indirect infringement allegations

should also be rejected. As to direct infringement, American Patents alleged infringement of

---

[1] The five patents asserted against the Hisense defendants are U.S. Patent Nos. 7,088,782 ("the '782 Patent"), 7,310,304 ("the 304 Patent"), 7,706,458 ("the '458 Patent"), 7,373,655 ("the '655 Patent"), and 7,934,090 ("the '090 Patent").

specific claims by specific Hisense products, providing cites to Hisense websites showing accused products. American Patents alleged that Hisense's products meet each element of specific claims. And American Patents identified certain features of the accused instrumentalities involved in the infringement. As to indirect infringement, American Patents plausibly alleged knowledge of the patents both from the filing of the suit and earlier.  American Patents specifically pleaded that Hisense induced infringement by, among other things, distributing instructions that guide users to use the products in an infringing manner.  And American Patents also specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe the asserted patents, providing examples of such features.  These allegations provide fair notice of American Patents' claims against Hisense and the grounds on which they rest, thereby putting Hisense on notice as to what it must defend.

Finally, Hisense's challenge to American Patents' willfulness allegations should be rejected.  Contrary to Hisense's arguments, pre-suit knowledge of the asserted patents need not be alleged to state a claim for willfulness.  And even if pre-suit knowledge were required, the complaint sufficiently alleges willfulness.

## II.    LEGAL STANDARDS

The law of the Federal Circuit applies to the question of whether a court has personal jurisdiction over a defendant in a patent case.  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).  To survive a motion to dismiss for lack of personal jurisdiction, American Patents need establish only a prima facie case that this Court has jurisdiction over the movant.  The Court may make the determination without an evidentiary hearing, resolving all factual disputes in favor of American Patents.  *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-CV-26, 2009 WL 1025467, *3 (E.D. Tex. Mar. 26, 2009). A Texas federal court has personal jurisdiction so long as such jurisdiction comports with due

process, which requires that jurisdiction be based on sufficient "minimum contacts" with the forum state and not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

A motion to dismiss under Rule 12(b)(6) is a "purely procedural question," so the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). In the Fifth Circuit, such motions "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER THE HISENSE MOVANTS

### A.   This Court Has Specific Jurisdiction Over a Defendant Who Puts the Accused Products Into the Stream of Commerce Knowing They Will Be Sold in Texas

Hisense's motion ignores decades of jurisprudence on the "stream of commerce" theory of personal jurisdiction: when a foreign company uses its distribution network to sell infringing products in a forum, it is subject to jurisdiction in that forum.  The stream of commerce theory of personal jurisdiction focuses on whether a defendant places a product within the stream of commerce, as part of efforts "to serve, directly or indirectly, the market for its product."  *World-Wide Volkswagen Corp. v. Woodson* ("*Volkswagen*"), 444 U.S. 286, 297 (1980).  Foreign defendants cannot escape the jurisdiction of United States courts simply by using their subsidiaries and other companies to sell their products here:

> The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that ***delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state***.

*Volkswagen*, 444 U.S. at 297-98 (emphases added).  Thus, "a prima facie showing of purposeful entry into the Texas stream of commerce is established by showing that the defendant's products were sold into a nationwide distribution network and that the products were available in Texas."

3

*IDQ Operating, Inc. v. Aerospace Communications Holdings Co., Ltd.*, 6:15-CV-781, 2016 WL
5349488, at *4 (E.D. Tex. June 10, 2016). [2]

In *Beverly Hills Fan*, for instance, the plaintiff sued a Chinese manufacturer for patent
infringement.  21 F.3d at 1564-65.  Although the company denied that it directly shipped
products to and sold products in the forum state, there was evidence that the accused products
were, in fact, on sale in the forum state.  Applying the stream of commerce theory, the Federal
Circuit held that shipping infringing products into the forum state through an established
distribution channel is sufficient to confer jurisdiction over a foreign corporation.  *Id*. at 1565.
"No more is usually required to establish specific jurisdiction."  *Id.*; *see Vishay Dale Elecs., Inc.
v. KOA Corp.*, No. 4:04-cv-247-A, 2004 WL 1908244, at *3 (N.D. Tex., Aug. 24, 2004) ( "No
more is usually required to establish personal jurisdiction in a patent infringement case arising
out of a stream of commerce theory than that the product was sold in the forum.").

---

[2] Since *Volkswagen*, the Supreme Court has split on the question of whether a defendant
must take some action "purposefully directed toward the forum State," in addition to placing its
product in the stream of commerce, for personal jurisdiction to exist.  *See Asahi Metal Ind. v.
Superior Ct.* ("*Asahi*"), 480 U.S. 102, 112 (1987); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564
U.S. 873 (2011).  The Federal Circuit has not resolved the issue.  *See Polar Electro Oy v. Suunto
Oy*, 829 F.3d 1343, 1348-50 (Fed. Cir. 2011).  When Federal Circuit law provides no guidance,
this Court has held that it is appropriate to apply the law of the Fifth Circuit.  *See Jacobs Chuck
Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-CV-185, 2005 WL 3299718 at *3
(E.D. Tex. 2005) (citing *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574-75
(Fed. Cir. 1984)).  The Fifth Circuit applies a pre-*Asahi* stream of commerce analysis, which
does not require an act specifically directed at the forum state.  *See Ham v. La Cienega Music
Co.*, 4 F.3d 413, 416 (5th Cir. 1993) ("Absent rejection by a majority on the Supreme Court, we
have continued to apply the stream of commerce analysis found in our pre-*Asahi* cases."); *see
also Irving v. OwensCorning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir. 1989) ("Because the
Court's splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue,
we continue to gauge [defendant's] contacts with Texas by the stream of commerce standard as
described in *World-Wide Volkswagen* and embraced in this circuit.").

B.     The Hisense Movants Knowingly Participate in a Distribution Chain That Results in the Sale of the Accused Products in Texas

When the facts are considered in light of the stream of commerce theory, personal jurisdiction is proper over the Hisense Movants because they undeniably place their accused products into established distribution channels knowing they will ultimately be sold in Texas. And the Hisense Movants' products are sold in Texas to end-users—including at nationwide retailers with stores in District like Best Buy.  (Ex. 1 [Hisense/Best Buy Screenshot]).  The Hisense Movants do not find their products sporadically or accidentally sold here in Texas.  The Hisense Movants instead engage in concerted, purposeful efforts to widely sell and distribute their products in this forum.  And when the products are sold by major retailers in Texas—as Hisense's accused products undeniably are—this Court routinely holds that distribution channels have been established to sell the infringing products in Texas:

- *IDQ Operating*, 2016 WL 5349488, at *4 (holding that where defendant "does not dispute that it sells its products to Wal-Mart, a nationwide retailer, and that WalMart sells the products 'everywhere,' including Texas," plaintiff "met its burden of making a prima facie showing that ACH placed its products into the stream of commerce with knowledge and an intention that they be sold in Texas.").

- *Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) ("ATEN's evidence that Emine continuously sells its products to a U.S. nationwide retailer is a strong indication that it intends to direct its products nationwide.").

- *GSK Technologies, Inc. v. Schneider Elec., S.A.*, No. 606CV361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007) (when defendants operating under a common brand name purposefully placed infringing products in the stream of commerce, and they were found for sale at major retailers in Texas, plaintiff sufficiently alleged stream of commerce theory of personal jurisdiction).

Importantly, the Hisense Movants do not rebut American Patents' allegations that support stream of commerce jurisdiction over the Hisense Movants.  Movants Hisense Co. and Guiyang Hisense argue that specific jurisdiction is lacking because they do not "manufacture, market, sell in the United States, or import into the United States[,] any of the products accused of infringing

5

AP's patents." (Mtn. at 3-4; Mtn. Ex.1 ¶¶ 7-14 (Hisense Co.); Mtn. Ex. 2 ¶¶ 7-14 (Guiyang Hisense)).  Even if that were true, this position hinges on the faulty premise that jurisdiction cannot be found over a company that has no physical presence in, and does not directly import into, the United States.  *Id.*  Not so. Even where a "foreign manufacturer ha[s] no license for doing business in the forum, no assets, employees, or agents for service of process in the forum, and no direct sales in the forum … exercise of jurisdiction [is] proper [where] the manufacturer purposefully shipped products through an established distribution channel with the expectation that those products would be sold in the forum." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010).

The Hisense Movants do not deny that they place products in an "established distribution channel with the expectation that those products would be sold in the forum." *Nuance Commc'ns, Inc*, 626 F.3d at 1233. Movants also do not dispute that they work in concert as to the accused products with corporate family members Hisense Electric Co., Ltd. and Hisense International (Hong Kong) America Investment Co. Ltd., whose connections to the United States are uncontested.[3]  Nor do Movants dispute that Hisense accused products manufactured in China are exported to the United States. Movants' motion sheds no light on what either company's role in the distribution chain *is*; it simply offers equally conclusory assertions regarding what the either of the Movants' roles is not—a direct presence in the United States. (*See* Mtn. at 4-9, 10-12). Even if true, such assertions do nothing to undercut stream of commerce jurisdiction, or otherwise show that jurisdiction here offends due process.  *See Beverly Hills Fan Co.*, 21 F.3d at 1560 (holding that stream of commerce jurisdiction is available even if a defendant "has no

---

[3] Notably, in contrast to cases cited by Movants, Movants do not dispute that they "made, used, sold, or offered to sell the accused products," – only that they did so while in the United States.  *Cf.  Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1306 (Fed. Cir. 2005) (dismissing where "despite discovery" there was no evidence that the entity made, used, sold or offered to sell the accused products, but rather was a holding company) (cited at Mtn. at 7).

assets or employees …; no agent for the service of process …; [no] license to do business …; and has not directly shipped the accused [product] into the forum state.").

Movants cite no authority—at least not in the patent context[4]—for the proposition that a member of a distribution chain may avoid jurisdiction *and* jurisdictional discovery by starving the Plaintiff of the information necessary to substantiate its "information and belief" pleadings, and providing no concrete evidence refuting those allegations. (*See* Mtn. at 6). The cases Movants cite where courts have found jurisdictional allegations insufficient have involved far more detailed declarations by Defendants, asserting, for example, that Defendant "did not know the specific final destination or the ultimate place of sale of the smart vehicles … and it did not enter into any contracts with the vehicle manufacturer, or any other entity, regarding the shipment, distribution, or sale of the vehicles…." *Zoch v. Daimler, AG*, No. 6:16-CV-00057-RWS, 2017 WL 2903264, at \*6 (E.D. Tex. May 16, 2017). Of course, Hisense Co. and Guiyang Hisense cannot (and do not) plead this sort of ignorance, given their overlap in management with Hisense Electric Co.  Thus, even accepting Movants' conclusory allegations as true—the opposite of what the Court must do at this stage—American Patents has sufficiently alleged facts common to both Movants sufficient to support personal jurisdiction.  And, as explained below, the facts specific to each of the Hisense Movants further support personal jurisdiction here.

1.  Hisense Co. is Part of the Hisense U.S. Distribution Chain

According to public documents from a Hisense affiliate, Hisense Co.—also referred to as Hisense Group"—appears to be the highest-level Hisense entity.  *See* Ex. 6 [2017 Annual Report

---

[4] The Federal Circuit recently recognized a distinction between the jurisdictional inquiry in patent infringement cases versus other cases.  *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, No. 2016-1772, 2018 WL 2187726, at \*3 (Fed. Cir. May 14, 2018) ("Our subject matter jurisdiction over this appeal is grounded in the commercial tort of patent infringement, not a contract dispute between the parties. In patent infringement disputes, our precedent makes clear that "the jurisdictional inquiry is *relatively easily* discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum.")

of Hisense Kelon Electrical Holdings Co. Ltd.] at 57, 163 (identifying Hisense Group as the

"Ultimate Holding Shareholder").  And "Hisense Group" is used as a catchall for Hisense's

unitary business venture, including its United States activity.  *See id.* at 57.

Hisense Co. asserts that "it is not foreseeable to Hisense Co. that it would be sued in

Texas."  (Mtn. at 7).  But even without connecting Hisense Co. to the activities of its subsidiaries

and related entities, there are sufficient allegations and evidence that Hisense Co. "purposefully

directed its activities at the United States," *M-I Drilling Fluids UK*, 2018 WL 2187726, at *3.

Publicly available documents confirm that Hisense "exports" its products to the United States.

Ex. 3 [2014 Hisense presentation] at 20; *see also* Ex. 4 [screenshot from 2017 Hisense Youtube

video]; Ex. 5 [screenshot from same video].[5]  Additionally, the 2018 User Manual for one

accused product shows that Hisense Co. knowingly and intentionally placed its accused products

in the stream of commerce in the United States, and availed itself of the protection of the laws of

the United States, including this country's "intellectual property laws."  *See* Ex. 2 [2018 User

Manual for Hisense H9E product] at 1.  The English 2018 User Manual also makes clear that

Hisense Co. (or some entity subject to its control) will "provide software updates to *continuously*

enhance your TV."  Ex. 2 at 31.

Finally, Hisense Group (i.e., Hisense Co.) has widely publicized its plans to win over the

United States market.  A 2015 press release stated Hisense Group's intent to "gain an upper hand

in both North and South America with the extended market capacity." Ex. 7 [Hisense press

release] at 1. And Hisense executives have touted its racing sponsorships as "the perfect platform

for Hisense to engage with the US market" and having "played a huge role in raising the profile

of Hisense in the United States."  Ex. 9 at 2. Indeed, a Formula One car with a Hisense logo

---

[5] The screenshots of Exhibits 4 and 5 were taken from a video available at
https://www.youtube.com/watch?v=mLhM9qoeR3Q.

raced in the 2017 "Circuit of the Americas" Grand Prix in Austin, Texas. Ex. 11 at 3. Hisense Co. Ltd. has also described itself in press releases as a "multinational consumer technology manufacturer and one of the largest television brands in the world, holding the #3 TV share position globally" and as being "committed to advancing the consumer technology industry across North America" with "dedicated R&D centers in Atlanta, Georgia; San Jose, California; and Toronto, Canada to enable localized product development and innovation." Ex. 12 [Hisense press release] at 3. This is further evidence that the exercise of jurisdiction comports with due process. *See Nuance Commc'ns, Inc.*, 626 F.3d at 1229 (citing evidence of intent to become active in U.S.).

These admissions by Hisense Co. undercut its invocation of cases where the allegations are simply that "defendants can foresee that [an] article will be circulated and have an effect in the forum state…." (Mtn. at 9-10) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008)). Nor does Hisense Co. properly argue that the advertising and sale of its products on websites in the United States cannot bolster jurisdiction. (Mtn. at 7). Hisense does not—and cannot—contend that it sells to third parties outside of the United States without knowing that its products will ultimately be sold here.

## 2. Guiyang Hisense is Part of the Hisense U.S. Distribution Chain

There is admittedly less publicly available evidence regarding the activities of Guiyang Hisense, the subsidiary of Defendant Qingdao Electronics (a company whose exploitation of the accused products in the U.S. is conceded). That is because Guiyang Hisense, like other named affiliates of Hisense Co., are subsumed in public documents under the umbrella of the "Hisense Group." However, publicly available information confirms that Guiyang Hisense "manufactures and distributes home audio-video products. The Company produces color televisions, digital televisions, and related components." Ex. 8 [Bloomberg Profile]. And Guiyang Hisense also

shares or shared overlapping management with Hisense Co. and Qingdao Electronics. Ex. 6 at 35 (Liu Hong Xin was a General Manager of Guiyang Hisense while holding executive positions at Hisense Co. and Hisense Electric Co.). The allegations that Guiyang Hisense is part of a distribution chain that purposefully avails itself of the privileges and protections of the United States are not conclusory; they are simply limited by Guiyang Hisense's own lack of transparency.

      C.    <u>The Hisense Defendants' Operation as a Single Entity Supports Jurisdiction Here</u>

Stream of commerce jurisdiction over the Hisense Movants is also supported by the unified operation of, and overlapping management among, Hisense affiliates.  The Federal Circuit has held that allegations of overlapping management are relevant to establishing personal jurisdiction over foreign companies. *See Nuance Commc'ns, Inc.*, 626 F.3d at 1229-33 (Fed. Cir. 2010) (rejecting challenge to stream of commerce jurisdiction partially based on fact that the foreign defendant and a U.S. affiliate were "commonly owned sister companies operating under a consolidated Global Management Team.").

Here, American Patents alleges that Defendants "are an interrelated group of companies which together comprise one of the leading sellers of televisions in the United States," "are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices… in the United States," and "operate as a unitary business venture." Dkt. 1 ¶¶ 6, 7, 9. The publicly available information reveals clear overlap in management between Defendants, with Non-Movant Hisense Electric Co. at the center of it. In addition to the overlapping management, a 2017 Report from a Hisense affiliate refers to movant Hisense Co. as "Hisense Group"—the catchall for Hisense's unitary business venture, including its United States activity. *See* Ex. 6 [2017 Annual Report of Hisense Kelon Electrical Holdings

10

Co. Ltd.] at 57. The document identifies Hisense Group as the "Ultimate Holding Shareholder," suggesting that it controls the other entities.  *Id*. at 163.

In addition to Hisense Co.'s individual contacts, it has overlapping management with Hisense Electric Co. Ltd., which does not dispute personal jurisdiction. Since 2015, Hisense Co.'s "director and president" Liu Hong Xin is also "the chairman of the board of directors of Hisense Electric Co., Ltd."  Ex. 6 [2017 Annual Report of Hisense Kelon Electrical Holdings Co. Ltd.] at 35.  Hisense Co. and Hisense Electric Co., Ltd. share at least two other overlapping directors—Mr. Lin Lan and Mr. Dai Hui Zhang. *See id*.

Movants provide no evidence refuting these allegations. Movants instead ask Plaintiff and this Court to simply take them at their word that they and Qingdao Hisense "are separate and distinct corporations that maintain separate, lawful corporate identities." (Mtn. Ex. 1 ¶¶ 15-17 (Hisense Co.); Mtn. Ex. 2 ¶¶ 15-17 (Guiyang Hisense)). But the Court need not find that corporate formalities were violated in order to exercise specific jurisdiction based on the ties between entities. *See, e.g., Oakley, Inc. v. Jofa AB*, 287 F.Supp. 2d 1111, 1116 (C.D. Cal. 2003) (denying foreign holding company's motion to dismiss for lack of personal jurisdiction where the company acted in concert with its subsidiaries to serve the market of the forum state by designing the infringing products and encouraging the sale and distribution of those products). Here, Hisense Co. seeks to hide behind Hisense Electric Co., Ltd. and any other Hisense entities openly operating in the U.S.

D.     Hisense's Cited Cases Are Easily Distinguished

Hisense's cases in support of its argument are not on point and are easily distinguishable from the facts of this case.  For instance, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) was not a stream of commerce case.  Further, it simply stands for the proposition that conclusory allegations, without detailed facts, are insufficient to make a

prima facie showing of personal jurisdiction.  American Patents has stated much more than conclusory allegations about the Hisense Movants' involvement, and those facts fit squarely into the stream of commerce theory articulated by numerous federal courts.

Hisense's reliance on *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) is also misplaced.  First, the appellate court affirmed the district court's dismissal of the action against defendant, but not on the grounds quoted by Hisense.  Rather, the court held that mere sales of a defendant's products, whether covered by the patents-in-suit or not, was insufficient to establish specific jurisdiction in a declaratory judgment suit.  *Id*. at 1338.

Finally, the remainder of the case law cited by Hisense is also inapposite, as the parties in those cases either did not dispute or did not allege that accused products were being sold in the forum. *See Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012); *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1306, 1310 (Fed. Cir. 2005); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009).

E.  <u>Trying American Patents' Claims Against the Hisense Movants in This Court Does Not Offend Traditional Notions of Fair Play and Substantial Justice</u>

Because Movants' activities were purposefully directed at the United States and the claim of patent infringement arises out of those contacts, the burden is on Movants "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *M-I Drilling Fluids UK Ltd.*, 2018 WL 2187726, at *4.  This is a five part inquiry, on which Movants bear the burden, that examines: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Id*. Contrary to Movants' suggestion that the "fairness" inquiry offers sweeping protections to foreign defendants, *see* Mtn. at 9, the Federal Circuit has made clear

that, where the first two prongs are met, it is the "rare case" where "fair play and substantial justice [will] defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant." *Id.* at *5 (citations omitted).

This is nowhere near that rare case. Movants offer nothing but conclusory recitations of the factors premised on assumptions that are far from established: Defendants are Chinese corporations so they should not be required to answer in Texas; Texas has no interest in adjudicating a patent dispute against a Chinse corporation with no relevant contacts, despite the undisputed facts that Defendants' products are sold in Texas; and, unremarkably, that American Patents' interest in the case is financial gain. (Mtn. at 9). These bare allegations confirm that this case is the prototypical patent infringement case against foreign entities who seek to profit from sales in the United States, *see* Ex. 3; Ex. 5; Ex. 7, and invoke the protection of U.S. law, Ex. 2, but avoid being called into court by a United States patent holder. *M-I Drilling Fluids UK Ltd.*, 2018 WL 2187726, at *4 (jurisdiction not unreasonable or unfair where burden of company with no U.S. presence being called into Court significant but that progress has made defense in U.S. less burdensome and outweighed by the interest of a patent holder in obtaining relief, and the United States' interest in enforcing federal patent law) (discussing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009)); *see also N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) (noting that the forum "clearly has an interest in prohibiting the importation of infringing articles into its territory"); *Beverly Hills Fan*, 21 F.3d at 1568 (holding that the forum's interest in discouraging injuries within its territory extends to patent infringement actions).  In any event, it is well-established that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Volkswagen*, 444 U.S. at 294 (*quoting Hanson v. Denckla*, 357 U.S. 235, 251 (1958)); *Icon Health*, 2009 WL 1025467 at *15.

13

F.   Alternatively, Jurisdiction Is Proper Under Rule 4(k)(2)

The complaint identifies Rule 4(k)(2) as an alternate basis for jurisdiction. (Dkt. 1 at ¶ 25).  But if the Hisense Movants were objecting to jurisdiction under this ground, they did not meet their burden to "identify . . . a forum where jurisdiction would have been proper at the time of filing, regardless of consent."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 734 (M.D.N.C. 2015) (upholding jurisdiction under Rule 4(k)(2) over defendant who "chose to direct the allegedly infringing product to the United States market by selling to an affiliate formed explicitly for that purpose" and did not show any U.S. forum where it would be subject to jurisdiction).  So jurisdiction is proper on this alternative ground as well.

G.   Alternatively, Jurisdictional Discovery Is Warranted

This case contains similar facts to those in *Beverly Hills Fan*, in which the Federal Circuit found that "no additional development of the record is necessary for a decision on defendant's jurisdictional motion" and that the district court erred in granting the motion to dismiss. *Beverly Hills Fan*, 21 F.3d at 1564.  There is ample evidence that the Hisense Movants have placed the infringing products into their established distribution channels throughout the U.S., subjecting them to personal jurisdiction here.  And there is also ample evidence that Movants' overlapping management and affiliate relationships permit exercise of specific jurisdiction either under an agency or an alter ego theory.  *See, e.g., Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379-80 (Fed. Cir. 2015) (explaining that evidence of "common control of [corporate entities], or any flow of profits from the former to the latter" support jurisdiction under an agency theory).

But even if the Court concludes that American Patents has not made the required prima facie showing, it would be premature to dismiss the Hisense Movants for lack of personal

jurisdiction without providing American Patents the opportunity to take discovery.[6]  This Court has held that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."  *See Womack v. Nissan North America, Inc.*, No. 2:06-CV-479, 2007 WL 5160790, at *2 (E.D. Tex. Oct. 12, 2007) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).  So to the extent that any doubt remains that the Hisense Movants were involved in the manufacture, sale, and marketing of the accused products—with the knowledge and intention that they would be sold throughout the United States, including the state of Texas—and that they were in fact sold here, American Patents should be permitted to develop these facts through discovery.  *See Womack*, 2007 WL 5160790, at *2.  The evidence American Patents has obtained from publicly available materials ensure that "jurisdictional discovery is not based on a mere hunch."  *Nuance Commc'ns, Inc.*, 626 F.3d at 1232, 1236 (citation omitted) (citing evidence that defendant "controls the actions of its subsidiaries" and sought to "'conquer' the U.S. market" and holding that even if "the proffered documents [are] insufficient in themselves to establish a prima facie case, this incomplete record nevertheless supports the need for additional discovery…").

## IV.    SUBSTITUTED SERVICE ON THE TEXAS SECRETARY OF STATE CONSTITUTED PROPER SERVICE ON THE HISENSE MOVANTS

### A.    Texas Law Provides for Substituted Service in These Circumstances

Despite the Hisense Movants' objections, American Patents properly served them by substituted service on the Texas Secretary of State.  Service on business entities, including "domestic or foreign corporation[s]," is governed by Rule 4(h).  Rule 4(h) has two subparts: part

---

[6] A separate motion for jurisdictional discovery is not required.  *See Traxell Techs. v. ALE USA Inc.*, No. 2:17-CV-00041, Dkt. 28 at 1-2 (E.D. Tex. Nov. 13, 2017) (granting leave to conduct venue discovery as requested in response to motion to dismiss).

(1) applies to service "in a judicial district of the United States," and part (2) applies to service "at a place not within any judicial district of the United States[.]" Because American Patents served the Hisense Movants within the United States, Rule 4(h)(1) applies.  Under Rule 4(h)(1)(A), when serving a foreign corporation service may be made in a judicial district of the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual."  In turn, Rule 4(e)(1) provides for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ."

The laws of Texas provide for substituted service on defendants like Hisense through the Secretary of State:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

Tex. Civ. Prac. & Rem. Code § 17.044(b).  In turn, the long-arm statute explicitly provides that a defendant who "commits a tort in whole or in part in this state" is doing business in this State. *Id.* § 17.042; *see also Ashley v. Hawkins*, 239 S.W.3d 175, 178 (Tex. 2009).

These conditions are satisfied here. The Hisense Movants do not maintain a designated agent for service of process in Texas.  Bao Decl. ¶¶ 7, 8, 12; Liu Decl. ¶¶ 7, 8, 12.  And each of the Hisense Movants does business in Texas under the meaning of § 17.042(2), at least because their alleged acts of patent infringement are a tort committed in whole or in part in this state. *See, e.g.*, Dkt. 1 at ¶¶ 6-9, 25-27; *ATEN Intern. Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) ("Since patent infringement is a tort, the sale of [a defendant's] infringing products in Texas is sufficient evidence that [the defendant] was 'doing business' under the Texas service statute, and thus sufficient evidence to meet the service provisions of Federal Rule of Civil Procedure 4(h)(1)(A).") (denying a Taiwanese defendant's motion to dismiss for improper service, where the patentee alleged acts of infringement in Texas).

16

In addition, the Texas Supreme Court has "said that the long-arm statute's broad doing-business language allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). So because the Hisense Movants are subject to personal jurisdiction in Texas—as shown in detail above—they are necessarily doing business in Texas as defined by the long-arm statute.

B.      The Hague Convention Is Not Implicated by Substituted Service

The Hisense defendants start their argument against service by citing several cases addressing service abroad pursuant to Rule 4(h)(2). But those cases are inapposite because they do not address Rule 4(h)(1) or substituted service through the Secretary of State.[7]

The Hisense Movants do cite some cases that concern substituted service. But they are all district court cases decided prior to the Supreme Court's recent decision in *Water Splash v. Menon*, 137 S. Ct. 1504 (2017). *Water Splash* makes clear that, where service culminates domestically, the post-service transmittal of documents abroad does not implicate the Hague Convention. The cases relied upon by Hisense all predate *Water Splash* and do not focus on determining where service culminates, as *Water Splash* requires.

In *Water Splash*, the Supreme Court considered whether the Hague Convention prohibits service by mail and, in doing so, it analyzed the scope of the Convention and when the Convention is implicated. *Water Splash,* 137 S. Ct. 1504. The Court held, "In short, the text of the Convention reveals, and we have explicitly held, that the scope of the Convention is limited to *service* of documents." *Id*. at 1509 (emphasis added). It does not apply to transmissions

---

[7] *See Blue Spike, LLC v. ASUS Comp. Intl.*, No. 6:16-cv-1384-RWS-KNM, 2018 WL 3301705, at *3 (E.D. Tex. Feb. 20, 2018) (finding that service of foreign parent corporation by serving its U.S. subsidiary was not effective because plaintiff did not show that U.S. subsidiary was authorized agent for service or alter ego of foreign parent); *Fujitsu, Ltd. v. Belkin Intl., Inc.*, 782 F. Supp. 2d 868, 874 n.5 (N.D. Cal. 2011) (finding, pursuant to Rule 4(h)(2) and 4(f)(2)(A), that Taiwanese attorney's hand delivery of complaint and summons to foreign defendants' headquarters in Taiwan did not comply with Taiwanese law).

abroad for non-service purposes, that is, "to transmissions abroad that do not *culminate in service*." *Id*. (emphasis added). Rather, the Convention "applies only when there is *both* transmission of a document from the requesting state to the receiving state, *and service* upon the person for whom it is intended." *Id*. (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988)) (emphasis added).

Accordingly, the *Water Splash* Court posited that "it is hard to imagine how the Convention could interfere with any *non-service communications*." *Id*.  Yet this is precisely what Hisense contends that the Convention requires.  Hisense argues that the post-service communication from the Texas Secretary of State to them in China implicates the Convention. But Texas law is clear that the Secretary's transmittal of notice to the defendant is a communication intended to provide *notice* of the service upon the Secretary of State; it is not itself an act of service.  *Compare* Tex. Civ. Prac. & Rem. Code § 17.045 ("Notice to Nonresident") *with id*. § 17.044 ("Substituted Service on Secretary of State").

In fact, Texas law is clear that substituted service culminates—the key point in time under *Water Splash*—when the Secretary of State is served.  The Secretary of State acts as a party's involuntary agent when it fails to name its own registered agent as required by law. *Bonewitz v. Bonewitz*, 726 S.W.2d 227, 230 (Tex. App. 1987) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 17.044 ["The secretary of state *is an agent* for service of process . . ."].) (emph. in original).  Just as service is complete when a party's registered agent is served, substituted service is deemed complete when the Secretary of State is served.  *Id*.  ("Service of process upon one who is an authorized agent for service of process constitutes constructive service upon the defendant . . .").  Thus, for instance, the time to answer a complaint is triggered when the Secretary of State is served, not when the defendant receives notice of the complaint from the Secretary of State.  *Id*.; *Hartline Dacus Barger Dreyer LLP v. Hoist Liftruck Mfg., Inc.*, No.

3:16-CV-1174-L-BK, 2017 WL 394526, at *3 (N.D. Tex. Jan. 6, 2017); *Till v. X-Spine Sys., Inc.*, No. 3:15-CV-00532-M, 2015 WL 3903567, at *2 (N.D. Tex. June 24, 2015).

What is more, the Texas Supreme Court has held that service is complete upon service on the Secretary of State, even if the nonresident defendant never receives a forwarded copy of the service documents. *Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (upholding default judgment against defendant who "never received anything the Secretary sent"). Indeed, the transmission from the Secretary in fact ***must*** be a non-service communication because, under Texas law, "the Secretary of State is not authorized by law to serve process." *World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 479 (Tex. App. 1998).

Service on the Hisense Movants was thus completed and culminated in Texas, rendering the Hague Convention irrelevant.

C.  Alternatively, The Court Should Permit Service by Alternate Means

The Court should deny the Hisense Movants' Rule 12(b)(5) motion, but, if the Court determines that service on the Secretary of State was not proper, then it should allow service by alternative means rather than dismiss the complaint. "Generally, dismissal of a complaint is inappropriate when there is a reasonable prospect that service may be properly effectuated." *Blue Spike, LLC*, 2018 WL 3301705, at *8. This request does not require a separate motion. *Arista Records LLC v. Media Svcs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) (granting request for service by alternate means when raised in plaintiffs' opposition brief and not in separate motion). "Rule 4(f) does not require that the plaintiff try to serve an internationally–based defendant under Rule 4(f)(1) or 4(f)(2) before authorizing [alternative] service under Rule 4(f)(3)." *WorldVentures Holdings, LLC v. Mavie*, 4:18-CV-393-ALM, 2018 WL 6523306, at *13 (E.D. Tex. Dec. 12, 2018) (citing *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015)).

19

If service by alternative means is necessary, American Patents requests authorization to do so via email to the Hisense Movants' U.S.-based outside counsel of record in this case.  *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 3:17-CV-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) (finding that service was improper but permitting plaintiff "to effect alternative service under Rule 4(f)(3) on [a Chinese defendant] through its counsel in this matter" without having filed a separate motion).  The Hague Convention does not prohibit service by this or by similar means such as LinkedIn or Facebook addresses, and such methods have been found to comport with due process requirements.[8]  Alternate service in this case is reasonable at least because Hague service on Chinese defendants like the Hisense Movants is expected to take one to two years, if it occurs at all.[9]

## V.   AMERICAN PATENTS SUFFICIENTLY PLEADED INFRINGEMENT AGAINST THE HISENSE MOVANTS

### A.   American Patents' Infringement Allegations Meet the Pleading Requirements

American Patents has met the *Twombly* and *Iqbal* pleading requirements to support a plausible claim of both direct infringement and indirect infringement. Hisense argues, wrongly,

---

[8] *See, e.g.*, *X-Mobile Techs. LLC v. Lenovo Grp., Ltd.*, No. 4:17-cv-700, Dkt. 12 (E.D. Tex. Nov. 14, 2017) (granting motion for alternate service on Chinese defendant via email to counsel, LinkedIn, and Facebook); *Federal Trade Commn. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *4-6 (S.D.N.Y. Mar. 7, 2013) (service of foreign defendant through email and Facebook messenger not prohibited by the Hague Convention and comports with due process requirements); *WhosHere Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3-4 (E.D. Va. Feb. 20, 2014) (service of foreign defendant via email, LinkedIn, and Facebook not prohibited by the Convention and comports with due process requirements); *Juicero, Inc. v. iTaste Co,*, No. 17-cv-01921-BLF, 2017 WL 3996196, at *2-3 (N.D. Cal. Jun. 5, 2017) (finding that alternate service on Chinese defendant company by email, Facebook, and on defendant's U.S. counsel comported with due process and was not prohibited by the Hague Convention or China's objections to particular Hague Convention articles).

[9] *See* Ex. 13 ["Suing a Chinese entity in the United States? Expect a two year wait to serve process"], *available at* https://www.iam-media.com/frandseps/suing-chinese-entity-united-states-expect-two-year-wait-serve-process (last accessed Dec. 5, 2018) (reporting that, as of 2015, wait time averaged anywhere from one to eight months).

that American Patents has not met those requirements for any of the asserted patents because the infringement allegations do not spell out in detail how claim elements map to the accused products.  (Mtn. at 17-18).

But this is not what the law requires. *Uniloc USA*, 2016 WL 7042236 at *2. If an element-by-element analysis were required, the Local Patent Rules requiring infringement contentions would be superfluous. *Id.* While this Court has not announced "a floor for the direct infringement standard," it has held that the pleading requirement is met where the plaintiff: (1) alleges a specific product infringes a specific claim; (2) alleges the product meets all the elements of a specific claim; and (3) incorporates by reference a website illustrating the accused product. *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017).

American Patents' allegations against Hisense go well beyond what this Court found sufficient in *Dynocom*.  For instance, as to each of the patents, American Patents has:

(a)      alleged that specific Hisense products infringe specific claims (*see, e.g.*, Dkt. 1 at ¶¶ 33, 34, 47, 48, 60, 61 (identifying the Hisense H9E as a specific product that infringes Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent); and ¶¶ 72, 73, 84, 85 (identifying the Hisense H9E as a specific product that infringes Claim 5 of the '655 Patent and Claim 1 of the '090 Patent));

(b)      alleged that those Hisense products meet each element of specific claims (*see, e.g.*, Dkt. 1 at ¶¶ 35-41, 49-53, 62-66 (allegations regarding each element of Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent); and ¶¶ 74-78, 86-89 (allegations regarding each element of Claim 5 of the '655 Patent and Claim 1 of the '090 Patent));

(c)      incorporated by reference a website illustrating the accused Hisense products (*see, e.g.*, Dkt. 1 at ¶¶ 33, 40, 47, 52, 60, 64, 72, and 84 (referencing, as a source, https://www.hisense-usa.com/electronics/tv/65h9e-plus));

(d)      included screenshots to help identify the accused products involved in Hisense's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 33, 40, 47, 52, 60, 64, 72, and 84 (screenshots of the Hisense H9E product and of materials describing it)); and

(e)      identified features of the accused products involved in Hisense's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 33, 47, 60, 72, and 84 (identifying "802.11ac capabilities,"

21

and "allow[ing] for initiation and/or control of Internet streamed content" of the accused products involved in the infringement)).

As the preceding paragraphs show, American Patents' allegations as to Hisense more than satisfy Rule 8's requirements.  Hisense cannot credibly claim that it does not know what the claim is and what it has to defend.

B.  <u>The Hisense Movants' Denials Are Irrelevant to Their Motion to Dismiss</u>

Although the Hisense Movants argue that the complaint should be dismissed because it alleges things that the movants say are untrue (Mtn. at 4-6), such denials are irrelevant to a motion to dismiss.  The Hisense Movants assert, for example, that they "do not manufacture, market, or sell any of the Accused Products in Texas or anywhere else in the United States." (Mtn. at 16). But that the Hisense Movants contest American Patents' factual allegations is irrelevant to whether those allegations plead a plausible claim for patent infringement.  Hisense's denials to the complaint's allegations belong in an answer, not a motion to dismiss.

The Hisense movants try to buttress their denials with conclusory employee declarations, but those are irrelevant at this stage.  It is black-letter law that "[i]n determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). And even if those outside-the-record documents could be considered at all on a Rule 12(b)(6) motion, they cannot be used to "trump contradictory allegations in the complaint." *See Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440-41 (5th Cir. 2015).  But contradicting the complaint's allegations is precisely why the declarations are offered: Movants use them to try to show that they "Do Not Perform the Acts Complained Of" by American Patents.  (Mtn. at 16).  The declarations must be disregarded.

C.    <u>American Patents Adequately Alleged Infringement by Each Hisense Movant</u>

Independent of its arguments about the complaint's level of detail, Hisense also argues, that the complaint does not adequately plead infringement by the Hisense Movants because it alleges conduct by "Defendants" or "Hisense" collectively.  (Mtn. at 18-19).  For this argument it relies solely on *M2M Solutions LLC v. Telit Commc'ns PLC*, an unpublished case from another district.  No. 14–1103–RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015).

But *M2M Solutions* does not help Hisense here. In *M2M Solutions*, the plaintiff based its claims of liability against a foreign parent company solely on its parent-subsidiary relationship with a U.S. defendant, without alleging that the parent company itself engaged in infringing activities.  *Id.*, at *3.  Here, by contrast, American Patents alleges that ***all*** defendants are engaged in infringing conduct, and that each Defendant is responsible for its own infringement. Unlike in *M2M Solutions*, the complaint's allegations here mean just what they say—*i.e.*, that Defendants (defined in the complaint collectively as all separate defendants, *see* Dkt. 1 at 1) have ***each*** infringed the asserted patents by making, using, selling, and/or offering to sell the accused products. *E.g.*, Dkt. 1 at ¶ 33.  That is why, in cases like this one, courts have distinguished *M2M Solutions* and rejected similar attacks on grouped allegations.  *See, e.g., Acantha LLC v. Depuy Synthes Sales, Inc.*, No. 15-cv-1257, 2016 WL 8201781, at *2 (E.D. Wis. July 28, 2016) (distinguishing *M2M Solutions* on this ground); *Sanders v. JGWPT Holdings, Inc.*, 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) ("Here, Defendants complain that they are lumped together as 'Defendants,' 'the JGWPT entities,' and 'the JGWPT defendant entities,' but these allegations are specific enough for the JGWPT Defendants to understand they are specifically implicated.").[10]

---

[10] *See also WAG Acquisition, LLC v. Multi-Media, LLC*, 2015 WL 5310203, *7-*8 (D.N.J. 2015) (denying motion to dismiss infringement allegations that referred to "Defendants" as it was clear that "Defendants" "means each individual Defendant"); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 655 (S.D. Miss. 2013) (rejecting argument that

D.     The Complaint's Allegations of Indirect Infringement Meet the Pleading Requirements

American Patents has also plausibly alleged indirect infringement.  Hisense argues that the complaint's indirect infringement allegations are insufficient for a number of reasons.  (Mtn. at 18-20).  In each case Hisense is wrong.

For example, Hisense argues that American Patents has not plausibly alleged inducement because American Patents has not shown "that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement."  (Mtn. at 19).  But American Patents specifically pleaded that Hisense committed acts of inducing infringement, including, for example, "distributing instructions that guide users to use the products in an infringing matter."  (Dkt. 1 at ¶ 93).  That alone is sufficient.  *See, e.g., Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *2 (E.D. Tex. Aug. 10, 2018) (Bryson, J., by designation) (holding that allegation that "Huawei provides manuals and instructions . . . and/or provides instructional and support materials on its website that teach and instruct its customers to operate those products in ways that practice the claimed invention" was sufficient to plead induced infringement for period in which Huawei had knowledge of the patents-in-suit).[11]

---

"lump[ing] all the Defendants and accused gaming machines together" did not provide sufficient notice); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F.Supp. 2d 342, 363-64 (S.D. Tex. 2011) (denying motion to dismiss where complaint used "the collective term 'Fugro' to refer to the actions of all Fugro Defendants, without distinguishing among the acts of each defendant").

[11] *See also Swipe Innovations, LLC v. Ingenico Corp.*, No. 9:12-cv-127-RC, 2013 WL 12142379, *3 (E.D. Tex. Jan. 3, 2013) (holding inducement was adequately pleaded by allegations that defendants engaged in the steps of "advising and directing [of] customers [to infringe using accused instrumentalities]," "advertising or promoting the use [of accused instrumentalities to infringe]," and "distributing instructions that guide users to use the [accused instrumentalities to infringe]).

24

Hisense also says, incorrectly, that American Patents' contributory infringement allegations are flawed.  (Mtn. at 19-20).  Hisense argues that American Patents improperly makes "the vague allegation that the accused products have 'special features.'"  (Mtn. at 19-20).  But the Federal Circuit has made clear that a special feature of an accused product can indeed be the basis of a contributory infringement claim.  *See, e.g., Ricoh Company, Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (holding that one cannot "escape liability as a contributory infringer merely by embedding [the infringing component] in a larger product with some additional, separable feature before importing it and selling it"); *see also i4i Limited Partnership v. Microsoft Corp.*, 670 F.Supp.2d 568, 578 n.5 (E.D. Tex. 2009).  American Patents specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe American Patents' patents.  (Dkt. 1 at ¶ 95, 98).  And American Patents even provided examples of such special features— improved wireless communication capabilities and initiation and/or control of Internet streamed content—used in a manner that infringes the claims of the patents-in-suit.  *Id*.

Finally, Hisense argues that the complaint's indirect infringement allegations as to pre-suit conduct should be dismissed because "the Complaint fails to sufficiently allege that Movants had knowledge of the patents-in-suit prior to the filing of the Complaint."  (Mtn. at 20-21).  But American Patents plausibly alleged that Hisense was willfully blind to the existence of the asserted patents before the suit was filed, and an allegation of willful blindness is an allegation of knowledge.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011).  As Hisense acknowledges, American Patents pleaded that Hisense had "a policy or practice of not reviewing the patents of others (*including instructing its employees to not review the patents of others*), and thus has been willfully blind of American Patents' patent rights" in the pre-suit period.  (Mtn. at 21). (emphasis added).  American Patents alleged knowledge in the pre-filing period because it

25

believes that discovery will show that Hisense affirmatively instructed its employees to avoid

reading the patents of others.

Hisense calls this willful blindness allegation implausible simply because American

Patents has included it in complaints against Hisense's competitors—without citing any case that

has ever dismissed a complaint on that basis.  And, in any event, that such conduct is widespread

should be unsurprising.  As Professor Mark Lemley has explained, companies like Hisense are

notorious for adopting head-in-sand policies:

> *Virtually everyone does it*.  They do it at all stages of endeavor.  Companies and
> lawyers tell engineers not to read patents in starting their research, lest their
> knowledge of the patent disadvantage the company by making it a willful
> infringer. . . . This *intentional ignorance* of patent rights in the hands of others
> has led some to label major manufacturers in the IT industries "patent pirates."

*See, e.g.*, Ex. 10 at 21-22 [M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008)]

(emphasis added).[12]

American Patents' allegations of willful blindness are thus far more than plausible.  *See*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that plausibility standard "simply

---

[12] *See also* Edwin H. Taylor & Glenn E. Von Tersch, *A Proposal to Shore Up the
Foundations of Patent Law that the Underwater Line Eroded*, 20 Hastings Comm. & Ent. L.J.
721, 737 (1998) ("As matters now stand many companies discourage employees from reading
patents.  This presumably lessens the chance that the company will be found to have knowledge
of a patent."); Dennis Fernandez, *Move Over Letterman:  Top 10 Most Common IP Management
Mistakes for New Companies*, Pat. Strategy & Mgmt., July 1, 2003, at 3 ("Additionally, in many
cases it may be appropriate for companies, as a matter of policy, to discourage looking at issued
patents owned by other entities so as to avoid awareness of potentially infringing patents.");
Mark A. Lemley & Ragesh K. Tangri, *Ending Patent Law's Willfulness Game*, 18 Berkeley
Tech. L.J. 1085, 1100-01 (2003) ("[I]n-house patent counsel and many outside lawyers regularly
advise their clients not to read patents if there is any way to avoid it.  What you do know will
certainly harm you, they reason, so it is generally better not to know.  Thus, from the perspective
of a potential infringer, ignorance is bliss."); Timothy B. Lee, *It's Normal for Software
Companies to Ignore Patents*, Forbes Contributor post (2/27/2012) ("[A]lmost all software
companies ignore their competitor's patents."); Tom Krazit, "*Why Tech Companies Want
Engineers To Ignore Patents When Designing Products*," Gigaom, Nov. 2, 2011 ("[S]everal
companies in the tech industry *actively discourage* their engineers from thinking about whether
concepts and products under development might have already been patented . . . .") (emphasis
added).

calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim].")  Indeed, this Court has previously denied a motion to dismiss similar allegations.  *See Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 938 (E.D. Tex. 2016) (Bryson, J., by designation) ("Taking all inferences in Script's favor, it has pleaded that defendant took an affirmative action to avoid gaining knowledge of the patents in suit—ignoring all patents as a matter of policy. . . . Script has sufficiently pleaded inducement . . . .") (emphasis added); *but see Nonend v. Apple, Inc.*, Case No. 2:15-cv-00466-JRG-RSP, 2016 WL 1253740, *2-3 (E.D. Tex. Mar. 11, 2016).

> E.  The Complaint's Allegations of Willfulness Meet the Pleading Requirements

According to Hisense, American Patents' willfulness allegations should be dismissed because they supposedly provide only "general and formulaic assertions" of willful infringement and do not "allege that Movants had knowledge of the patents prior to the current suit."  (Mtn. at 21-23).  Hisense is wrong.  American Patents plausibly alleged willful infringement, and pre-suit knowledge is not required to state a claim for willfulness.  And even if pre-suit knowledge were required, American Patents has adequately alleged such knowledge.

> 1.  American Patents Plausibly Alleged That Hisense Intentionally Infringed

American Patents plausibly alleged willful infringement by Hisense.  Willfulness requires proof that the defendant "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement."  *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (rejecting challenge to jury instruction on willfulness).  The complaint alleged that Hisense had knowledge of the patents, that Hisense's customers are directly infringing, and that Hisense has encouraged (and continues to encourage) them to infringe.  (Dkt. 1 at ¶¶ 6-9, 25-26, 42, 54, 67, 79, 90, 93-102).  These allegations are sufficient to state a claim for willful infringement at the pleading stage.  *See, e.g., Script Sec.*

*Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 939 (E.D. Tex. 2016) (Bryson, J., by designation) (rejecting argument that plaintiff failed to plead facts showing that defendants' "actions constituted an unjustifiably high risk of infringement" because plaintiff "has pleaded knowledge of the patent, that defendants' customers are infringing, and that the defendants encouraged this infringement").

Hisense suggests that American Patents' allegations are flawed because they do not show "egregious" behavior.  (Mtn. at 21).  But whether infringing conduct was sufficiently "egregious" is not an element of willful infringement at all.  Instead, "egregiousness" is for the court to consider in exercising its discretion to enhance damages after the jury's finding of willfulness. *See Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, 2018 WL 2149736, at *8 (E.D. Tex. 2018) ("the jury must decide whether the infringement was *intentional*, and then the court must decide whether the intentional conduct was *egregious* enough to justify enhanced damages") (emphasis added).

*Halo* did state that enhanced damages awards are meant to be a "sanction for egregious infringement behavior." 136 S. Ct. at 1932. But that does not mean egregiousness is an element of willful infringement. Indeed, "*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer" is sufficient to establish willfulness and allow the court to consider enhancing damages. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotes omitted). For that reason, in *Ericsson* this Court rejected a defendant's challenge to the jury's willfulness verdict specifically because the defendant's "assumption that a jury's willfulness finding cannot stand without egregious or shocking infringement behavior is inconsistent with the Federal Circuit's decision in *Artic Cat.*" *Ericsson*, 2018 WL 2149736, at *9.

28

### 2. Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness

Hisense also says that American Patents' willful infringement allegation is flawed because, according to Hisense, willful infringement must be based on pre-suit knowledge of the patents. (Mtn. at 21-23). That is not the law: "there is nothing in *Halo* suggesting that pre-suit knowledge is required for willfulness. . . . Culpability can arise pre- or post-suit." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017); *see also Plano Encryption Tech., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG at 13 (E.D. Tex. Sept. 22, 2017) ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement.").

For these reasons, even if the complaint contained no pre-suit knowledge allegations, American Patents has stated a claim for willfulness by pleading that the complaint put Hisense on notice of the patents and that Hisense's infringement is ongoing. (Dkt. 1 at ¶¶ 6-9, 25-26, 34, 42, 48, 54, 61, 67, 73, 79, 85, 90, 93-102). No more is required. *See, e.g.*, *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 215-CV-1274-JRG-RSP, 2016 WL 4778699, at *7 (E.D. Tex. Aug. 19, 2016) *adopted* No. 2:15-CV-1274-JRG-RSP, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) ("The Court also finds the complaint states a claim to post-suit willful infringement… The complaint alleged that despite these facts, the [] Defendants have not ceased their infringing activities."); *see also WordCheck Tech, LLC v. Alt-N Techs., Ltd.*, No. 6:10-cv-457, Dkt. 755, at 3 (E.D. Tex. July 17, 2012) (holding that an allegation of notice of the patents-in-suit and that continued infringement would be willful is sufficient at the pleading stage).

### 3. Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here

Even if Hisense were correct about the law, Hisense would still lose because American Patents has adequately pleaded pre-suit knowledge for all of the asserted patents. As Hisense

acknowledges (and as explained in more detail in Section V.C, *supra*), American Patents pleaded that Hisense had "a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' rights under the patents." (Mtn. at 21).  That is sufficient at the pleading stage. *See* Fed. R. Civ. P. 11(b)(3) (allowing allegations of fact on information and belief if they "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"); *see also Blitzsafe Texas*, 2016 WL 4778699, at \*6 (discussing applicability of willful blindness to allegations of pre-suit willful infringement).

## VI.    IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

To the extent that the Court rules that any of American Patents' claims are not adequately pleaded, American Patents requests an opportunity to amend its complaint to address any deficiencies that the Court finds, or, at a minimum, to incorporate its P.R. 3-1 infringement contentions by reference once those are submitted. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH,* 839 F.3d 422, 428 (5th Cir. 2016) (finding an abuse of discretion for the district court's failure to grant leave to amend and explaining "the language of this rule evinces a bias in favor of granting leave to amend, and "[a] district court must possess a substantial reason to deny a request.") (citations and internal quotations omitted). "[T]he Rule 'evinces a bias in favor of granting leave to amend.'" *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x 205, 208 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.*

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny the Hisense Movants' Motion.


Dated: February 1, 2019                    Respectfully submitted,

                                           /s/ *C. Ryan Pinckney*
                                           Matthew J. Antonelli
                                           Texas Bar No. 24068432
                                           matt@ahtlawfirm.com
                                           Zachariah S. Harrington
                                           Texas Bar No. 24057886
                                           zac@ahtlawfirm.com
                                           Larry D. Thompson, Jr.
                                           Texas Bar No. 24051428
                                           larry@ahtlawfirm.com
                                           Christopher Ryan Pinckney
                                           Texas Bar No. 24067819
                                           ryan@ahtlawfirm.com
                                           Michael D. Ellis
                                           Texas Bar No. 24081586
                                           michael@ahtlawfirm.com

                                           ANTONELLI, HARRINGTON
                                           & THOMPSON LLP
                                           4306 Yoakum Blvd., Ste. 450
                                           Houston, TX 77006
                                           (713) 581-3000

                                           Stafford Davis
                                           State Bar No. 24054605
                                           sdavis@stafforddavisfirm.com
                                           Catherine Bartles
                                           Texas Bar No. 24104849
                                           cbartles@stafforddavisfirm.com
                                           THE STAFFORD DAVIS FIRM, PC
                                           The People's Petroleum Building
                                           102 N College Ave., 13th Floor
                                           Tyler, Texas 75702
                                           (903) 593-7000

                                           *Attorneys for American Patents LLC*

31