UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:18-cv-00768-ALM |
| | ) |
| HISENSE CO. LTD., ET AL. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS HISENSE ELECTRIC CO., LTD. AND HISENSE INTERNATIONAL (HONG KONG) AMERICA INVESTMENT CO., LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12**

## I. AP'S ARGUMENTS REGARDING SERVICE ARE INCORRECT

### A. "Substituted Service" Is Not Sufficient Here

The Supreme Court's *Water Splash* decision does not overrule or moot the established precedent in Texas federal courts that: "Because substituted service on the Texas Secretary of State for a nonresident defendant requires the transmittal of judicial documents abroad, the Hague Convention is implicated." *Macrosolve, Inc. v. Antenna Software, Inc.,* No. 6:11-cv-287, 2012 WL 12903085, at *2 (E.D. Tex. March 16, 2012); *see also, Duarte v. Michelin N. Am., Inc.,* No. c-13-cv-50, 2013 U.S. Dist. Lexis 73862, at *10 (S.D. Tex. May 3, 2013); *Alternative Delivery Sols. v. R.R. Donnelly & Sons, Co.*, No. SA-05-CA-0172-XR, 2005 U.S. Dist. Lexis 15949, at *6 (W.D. Tex. July 8, 2005); *Paradigm Entm't, Inc. v. Video Sys. Co.*, No. 3:99-cv-2004-P, 2000 U.S. Dist. Lexis 2667, at *12 (N.D. Tex. 2000).

The Supreme Court in *Water Splash* affirmed that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). Further, the Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service abroad*." *Id.* at 1509. (emphasis in original).

AP cites no federal court decision that has adopted its argument that a plaintiff can circumvent the Hague Convention by serving the Texas secretary of state, and the secretary of state does not have to make any effort to provide notice of the process to the foreign defendant. AP ignores that its extreme argument has been rejected by a federal court in Texas. *See, e.g., Duarte, supra* at *7-10 (finding plaintiffs' argument based on *Bonewitz v. Bonewitz,* 726 S.W.2d 227, 230 (Tex. App. 1987) "unpersuasive" and noting that "Plaintiffs have pointed to no federal

1

law stating that service upon the Texas secretary of state, without more, suffices for service upon a foreign corporation.")

Nor does AP explain how its indifference to whether and when a foreign defendant receives notice of the complaint could comply with federal standards of Due Process, which are the foundation for requiring proper service of process. The Hague Convention is an international treaty, and "[t]he purpose of that multilateral treaty is to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, supra* at 1507. AP's position would allow a state law to unilaterally displace this treaty.

   B.  **AP's Request for Alternative Service Should be Denied**

AP seeks to reward itself with alternative service because it made absolutely no effort to serve Movants under the Hague Convention. At the very least, AP should make a good faith effort to effect service through the Hague Convention, and only request alternative service if and when compelling reasons warrant it. *See, e.g., Int'l Designs Corp., LLC v. Qingdao Seaforest Hair Prods. Co., Ltd.*, No. 17-60431, 2018 U.S. Dist. Lexis 3038, at *11-12 (S.D. Fl. Jan. 4, 2018) (denying request for alternative service where plaintiffs did not attempt service through the Hague Convention or show that such service would be unduly burdensome or futile).[1]

AP's relies on anecdotal hearsay within hearsay to argue that service on a Chinese defendant can take 1 to 2 years under the Hague Convention. (Dkt. No. 55, Ex. 13.) There is

---

[1] In all of the cases cited by AP, an effort was made to serve a foreign defendant under the Hague Convention before requesting alternative service, and the defendant did not file an opposition to the motion for alternative service. *Juciero, Inc. v. iTaste Co.*, No. 17-cv-01921, 2017 WL 3996196 (N.D. Cal. June 5, 2017); *X-Mobile Techs. LLC v. Lenovo Grp., Ltd.*, No. 4:17-cv-700, Dkt. No. 11 (E.D. Tex. Nov. 7, 2017); *WhosHere, Inc. v. Orun*, No. 1:13-cv-00526, 2014 U.S. Dist. Lexis 22084 (E.D. Va. Feb. 20, 2014); *Fed. Trade Commission v. PCCare247, Inc.*, 12 Civ. 7189, 2013 U.S. Dist. Lexis 31969 (S.D.N.Y. March 7, 2013).

nothing close to a scientific data analysis to support this hearsay postulate. It is not clear to what extent any delays are due to plaintiffs, like AP, who make no effort to diligently comply with the Hague Convention. It would be far more efficient for the parties and Court if AP put even half as much effort in complying with the Hague Convention as it does to avoid it.

## II. AP'S DIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

In a patent case, a plaintiff must plead a factually supported plausible claim that fairly places the defendant on notice of the activity accused of infringement. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). AP's bare allegations that the accused products "meet each element of the specific claims" are implausible and lack factual support.

First, while addressing one exemplary claim of each asserted patent, the Complaint provides no factual support that structure or functionality in the accused products meets: 5 out of 7 limitations of claim 30 of the '782 Patent; 4 out of 5 limitations of claim 1 of the '304 Patent; 11 out of 13 limitations of claim 1 of the '458 Patent; 3 out of 6 limitations of claim 1 of the '655 Patent; and 3 out of 4 limitations of claim 1 of the '090 Patent.

Second, these factual omissions mask a broader deficiency: certain asserted claims require *multiple* devices that communicate with each other. AP, however, has accused only *individual* televisions of direct infringement. AP alleges that certain Hisense-branded televisions allegedly sold by Movants directly infringe the asserted claims. (*See*, *e.g.*, Dkt. No. 1 at ¶¶ 33-34, 47-48, 60-61, 72-73, and 84-85.) But AP does not allege how a single television plausibly directly infringes claims requiring multiple devices.

Third, the images and links in the Complaint do not cure AP's failure to accuse multiple devices of direct infringement, as discussed above. Moreover, the images and links do not provide adequate notice where, as here, the claims are directed to complex subject matter. [2]

Determining the level of specificity sufficient for notice is a "very 'context specific task.'" *Uniloc USA, Inc. v. Avaya Inc.*, 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016), at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In this case, facts surrounding the alleged infringement of the asserted the claims are complex. The allegations against specific products amount to nothing more than repetition of claim language, legal conclusions, and superficial images of televisions and basic product features.

AP's cite to *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017) is inapposite. *Dynocom* involved a concrete, tangible invention and relatively straightforward claims—specifically, a mechanical device for measuring engine power output. *See id.* at *1. In contrast, the asserted patents in this case are directed to "more nebulous, less tangible inventions such as computer software methods [that] may require a higher degree of specificity to provide proper notice to the defendant." *Uniloc*, 2016 WL 7042236, at *3 (internal quotations omitted). In the context of these patents, the Complaint is deficient because it (1) leaves unanswered the question of what features or functionality of Movants' products allegedly infringe, and (2) contains implausible allegations.

---

[2] The asserted claims of the '782, '304, and '458 Patents are directed to methods or apparatuses for time and frequency synchronization in multi-input, multi-output (MIMO) systems employing wireless Orthogonal Frequency Division Multiplexing (OFDM) communication methods. (*See* Dkt. No. 1, Exs. 1-3.) The asserted claims of the '655 and '090 Patents are directed to particular methods for authenticating access to network resources where one device assumes the identity of another device. (*See* Dkt. No. 1, Exs. 4-5.)

4

### III. INFRINGEMENT BY EACH MOVANT IS NOT SUFFICIENTLY PLEADED

AP refuses to distinguish between the alleged actions of Hisense Co., Guiyang Hisense, Qingdao Hisense, and Hisense (Hong Kong). Instead, AP clings to the tactic of indiscriminately lumping them together as "Hisense" or "Defendants." AP does not state that it lacks sufficient information to be more specific in alleging which particular Hisense entity committed the alleged acts of direct infringement, induced informant or contributory infringement. Rather, it insists on obfuscation.[3]

AP misses the mark in its attempt to distinguish *M2M Solutions LLC v. Telit Communications PLC,* 2015 U.S. Dist. Lexis 102349 (D. Del. Aug. 5, 2015). AP makes the irrelevant point that "the plaintiff based its claims of liability against a foreign parent company solely on its parent-subsidiary relationship . . . without alleging that the parent company itself engaged in infringing activities." (Dkt. No. 55 at 23.) The Delaware District Court nevertheless dismissed the complaint because the domestic subsidiary and foreign parent corporations were lumped together under the undifferentiating label "Telit."

### IV. AP'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

#### A. Direct Infringement Is a Prerequisite for Indirect Infringement

The Complaint fails to state a plausible claim for indirect infringement because it does not plausibly allege an act of direct infringement by any third party. The Complaint alleges that infringement arises from, *e.g.*, "synchronizing a Multi-Input Multi-Output (MIMO) Orthogonal Frequency Division Multiplexing (OFDM) system in time and frequency domains" (Dkt. No. 1, ¶

---

[3] AP's reliance on *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003) is misplaced. Unlike *Scanlan*, Movants' declarations merely provide context as to the need to adequately plead the actions by each defendant that allegedly constitute patent infringement.

35), using "an Orthogonal Frequency Division Multiplexing (OFDM) transmitter" (*id.* at ¶49), "synchronizing a communication system" (*id.* at ¶62), "arranging a network element in a network, the network element being pre-authorized to access a set of network resources" (*id.* at ¶75), or using "a method for providing access to a network resource." (*id.* at ¶86). Yet the Complaint nowhere alleges that any of Movants' customers or end users configure or operate such communication or network systems, such as by purchasing and configuring third-party networking hardware and software or by subscribing to and pre-authorizing third-party network services. Nor does the Complaint anywhere allege that Movants provide such third-party hardware, software, or services. Thus, the Complaint does not plausibly allege facts to support an inference that end-users use the accused products with any third-party resources to create a system that could perform any underlying act of direct infringement, which is necessary for indirect infringement.

### B. AP Cannot Satisfy the Pre-Suit Knowledge Requirement by Asserting that All Large Companies are Blind to Infringement

The Complaint alleges that "Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights." (Dkt. No. 1 at ¶ 99.) AP argues that this allegation is sufficient to infer pre-suit knowledge because a law professor has written that large companies "are notorious for adopting head-in-sand policies." (Dkt. No. 55 at 26.) The article AP cites, in addition to being 10-year old hearsay, does not even mention Hisense. Under AP's logic, the boilerplate accusation in paragraph 99 of the Complaint would suffice to plead pre-suit knowledge in every case against any large company – vitiating the specific knowledge requirements of indirect infringement. This is plainly insufficient.

### C. AP Does Not Adequately Plead Other Elements of Induced Infringement

AP asserts it need only plead that Movants "distribut[ed] instructions that guide users to use the products in an infringing manner" to satisfy the specific intent prong of inducement. (Dkt. No. 55 at 24.) The cases AP cites, do not support its argument. Each case involves pleadings that provide far more detail than what AP alleges here. For example, in *CyWee*, plaintiff "describ[ed] three user manuals that teach allegedly infringing behavior, and attached each," and "describe[ed] exemplary allegations of direct infringement in great detail." *CyWee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *4 (E.D. Tex. Aug. 10, 2018). AP's Complaint makes only conclusory allegations, fails to identify a single example of instructions provided to customers, and fails to identify what behavior or functionality is at issue even at a basic level.

### D. AP Does Not Adequately Plead Contributory Infringement

AP argues that the relevant inquiry for contributory infringement is whether the "accused products have special features that have no substantial use other than uses that infringe American Patents' patents." (Dkt. No. 55 at 25.) AP then argues that it provided examples of "special features," such as "improved wireless communication capabilities and initiation and/or control of Internet streamed content." *Id.* (citing Dkt. No. 1 at ¶¶ 95, 98.) These generic phrases identify no "special features" of the accused products. They are merely paraphrases of the titles and abstracts of the patents-in-suit, which do not make out a plausible, factually supported claim that there is an absence of non-infringing uses. *See Soverain Software LLC v. Euromarket Designs, Inc.*, 6:12-cv-145, Doc. 54, slip op. at 9 (E.D. Tex. Mar. 21, 2014). Moreover, the Complaint nowhere even alleges that the accused products with "wireless communications capabilities" could not also wirelessly communicate with older routers that do not use OFDM modulators and MIMO configurations as claimed in the patents. Nor does it allege that the accused products could not initiate streamed internet content from sources that do not require "assuming the identity of the

7

network node that is pre-authorized," as the claims require. These non-infringing uses are apparent from the Complaint and preclude any plausible inference of contributory infringement.

In addition, the Complaint fails to allege who supplied the components that allegedly contain the "special features" and instead refers to the defendants collectively. *See*, *e.g.*, *M2M*, 2015 U.S. Dist. Lexis, at *13 (contributory infringement claim insufficient because allegations directed to defendants collectively). Thus, AP's contributory infringement claims should be dismissed.

## V. AP'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A. The Complaint Fails to Plausibly Allege Willful Infringement

AP inaccurately states the law of willful infringement, claiming it is sufficient to merely allege that Movants "had knowledge of the patents, that Hisense's customers are directly infringing, and that Hisense has encouraged (and continues to encourage) them to infringe." (Dkt. No. 55 at 27.) AP relies on an outdated case, *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 939 (E.D. Tex. 2016)). AP ignores the later clear directive by the Supreme Court that the alleged willful infringer has engaged in "egregious … misconduct beyond typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016).

AP argues that "egregious" conduct is not an element of willful infringement and is only relevant to awarding enhanced damages. (Dkt. No. 55 at 28.) That distinction is unsupported in *Halo* or its progeny. AP's reliance on *Ericsson v. TCL* and *Arctic Cat* is misplaced. Those cases deal with the issue of jury instructions under *Halo*: whether egregious conduct is a factual inquiry to be put to the jury rather than the court. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *8 (E.D. Tex. May 10, 2018). That the court in *Ericsson* opined, in dicta, that determination of egregious conduct is better reserved for the court does not obviate egregious conduct as a pleading requirement for willful infringement. *Id.* Further,

8

*Arctic Cat's* affirmation that "*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness," does not diminish *Halo*'s requirement for egregious conduct. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

### B. Willful Infringement Claims Must be Grounded in Pre-Filing Conduct

AP incorrectly alleges that pre-suit knowledge is no longer required to state a claim for willfulness. But *Halo* did nothing to alter this aspect of *In re Seagate,* as another court in this district previously held: "Under *Seagate*, "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, Dkt. 34, slip. op. at 3 (E.D. Tex. Oct. 19, 2016) (emphasis added) (internal citations omitted.)

Further, *Huawei Techs.* is relied upon by the AP, but is readily distinguishable. Huawei's willfulness allegation survived dismissal because the complaint expressly alleged communications between Huawei and T-Mobile that provided notices of the patents prior to filing the complaint. *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, slip. op. at 13 (E.D. Tex. Feb. 21, 2017). AP alleges no facts remotely similar.

AP's willful blindness argument also fails. *See Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018) (finding willful blindness insufficient to show egregious behavior).

Respectfully submitted,

By: */s/ James R. Sobieraj*

James R. Sobieraj (IL Bar No. 6183779)
Jsobieraj@brinksgilson.com
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, Illinois 60611-5599

9

Phone:  (312) 321-4200
Fax: (312) 321-4299

Attorney for Defendants
Hisense Co. Ltd.,
Hisense Electric Co., Ltd.,
Guiyang Hisense Electronics Co., Ltd., and
Hisense International (Hong Kong) America
Investments Co. Ltd.

10

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via Court's CM/ECF system per Local Rule CV-5(a)(3) on this 15th day of February, 2019.

By: */s/ James R. Sobieraj*

James R. Sobieraj (IL Bar No. 6183779)
Jsobieraj@brinksgilson.com
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, Illinois  60611-5599
Phone:  (312) 321-4200
Fax: (312) 321-4299

Attorney for Defendants
Hisense Co. Ltd.,
Hisense Electric Co., Ltd.,
Guiyang Hisense Electronics Co., Ltd., and
Hisense International (Hong Kong) America Investments Co. Ltd.