**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HISENSE CO. LTD., ET AL.,<br><br>    Defendants. | CIVIL ACTION NO. 4:18-cv-768-ALM<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**AMERICAN PATENTS' OPPOSITION TO SHARP'S MOTION TO DISMISS UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................................1

II. LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6) ...................1

III. AMERICAN PATENTS SUFFICIENTLY PLEADED DIRECT INFRINGEMENT ...........2

    A. The Direct Infringement Allegations Meet the Pleading Requirements .......................... 2

    B. Sharp Fails to Show That the Complaint Improperly Grouped Allegations Against Different Defendants.......................................................................................................... 5

    C. Sharp's Additional Arguments Regarding the '782 Patent Are Unpersuasive ................ 7

IV. AMERICAN PATENTS SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT .......8

V. AMERICAN PATENTS SUFFICIENTLY PLEADED WILLFULNESS............................13

    A. American Patents Plausibly Alleged That Sharp Intentionally Infringed ..................... 13

    B. Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness......................... 14

    C. Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here ................ 15

VI. IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED....................................15

VII. CONCLUSION ........................................................................................................................16

I.      **INTRODUCTION**

American Patents' original complaint in this case alleged that Sharp infringed three patents.[1] Sharp has moved to dismiss the complaint for failure to state a claim of direct and indirect infringement and for failure to state a claim of willful infringement.

Sharp's challenge to American Patents' direct and indirect infringement allegations should be rejected. As to direct infringement, American Patents alleged infringement of specific claims by specific Sharp products, providing cites to websites showing accused products. American Patents alleged that Sharp's products meet each element of specific claims. And American Patents identified certain features of the accused instrumentalities involved in the infringement. As to indirect infringement, American Patents plausibly alleged knowledge of the patents both from the filing of the suit and earlier. American Patents specifically pleaded that Sharp induced infringement by, among other things, distributing instructions that guide users to use the products in an infringing manner. And American Patents also specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe the asserted patents, providing examples of such features. These allegations provide fair notice of American Patents' claims against Sharp and the grounds on which they rest, thereby putting Sharp on notice as to what it must defend.

Sharp's challenge to American Patents' willfulness allegations should also be rejected. Contrary to Sharp's arguments, pre-suit knowledge of the asserted patents need not be alleged to state a claim for willfulness. And even if pre-suit knowledge were required, the complaint sufficiently alleges willfulness.

II.     **LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) is a "purely procedural question," so the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d

---

[1] The three patents asserted against Sharp in this case are U.S. Patent Nos. 7,088,782 ("the '782 Patent"), 7,310,304 ("the '304 Patent"), and 7,706,458 ("the '458 Patent").

1069, 1072 (Fed. Cir. 2009). In the Fifth Circuit, such motions "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Rule 8(a) requires only a "short plain statement of the claim" sufficient to give the defendant fair notice of what act is being accused. Fed. R. Civ. P. 8(a). In deciding a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016). Despite the facial simplicity of these requirements, the Supreme Court explained in *Bell Atl. Corp. v. Twombly* that the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The plausibility standard, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In general, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.

### III. AMERICAN PATENTS SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

#### A. The Direct Infringement Allegations Meet the Pleading Requirements

American Patents has met the *Twombly* and *Iqbal* pleading requirements to support a plausible claim of direct infringement. Sharp argues, wrongly, that American Patents has not met those requirements for any of the asserted patents because the infringement allegations do not spell out in detail how claim elements map to the accused products. (Mtn. at 8-10). For example, Sharp complains that the complaint lacks "any factual allegations explaining how the elements of the claimed methods or elements of the claimed apparatus map onto the processes and features of the accused products." *Id.* at 9.

From this argument, it is apparent that even a probability standard would not satisfy Sharp, much less the plausibility actually required by *Twombly*. It seems that nothing short of element-by-element infringement contentions *actually proving* infringement would be enough to satisfy Sharp at the pleadings stage.

But this is not what the law requires. If an element-by-element analysis were required, the Local Patent Rules requiring infringement contentions would be superfluous. *Uniloc USA*, 2016 WL 7042236 at *2–3. While this Court has not announced "a floor for the direct infringement standard," it has held that the pleading requirement is met where the plaintiff: (1) alleges a specific product infringes a specific claim; (2) alleges the product meets all the elements of a specific claim; and (3) incorporates by reference a website illustrating the accused product. *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017).

Here, American Patents has provided all of this, and more. Sharp cannot credibly claim that it does not know what the claim is and what it has to defend. Indeed, American Patents' allegations against Sharp go well beyond what this Court found sufficient in *Dynocom*. For instance, as to each of the patents, American Patents has:

(a) alleged that specific Sharp products infringe specific claims (*see, e.g.*, Dkt. 1 at ¶¶ 33, 34, 47, 48, 60, 61 (identifying the Sharp brand 55" Class 4K HDR Smart TV family of products as specific products that infringes Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent));

(b) alleged that those Sharp products meet each element of specific claims (*see, e.g.*, Dkt. 1 at ¶¶ 35-44, 49-53, 62-66 (allegations regarding each element of Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent));

(c) incorporated by reference a website illustrating the accused Sharp products (*see, e.g.*, Dkt. 1 at ¶¶ 33, 40, 47, 52, 60, 64 (referencing, as a source, https://www.samsclub.com/sams/55-uhd-smart-120hz-3-hdmi-wifi/prod22021839.ip?xid=p1p_product_1_1));

(d) included screenshots to help identify the accused products involved in Sharp's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 33, 40, 47, 52, 60, 64 (screenshots of the Sharp brand 55" Class 4K HDR Smart TV products and of materials describing them)); and

(e) identified features of the accused products involved in Sharp's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 33, 47, 60 (identifying "802.11ac capabilities" of the accused products involved in the infringement)).

As the preceding paragraphs show, American Patents has more than satisfied Rule 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). American Patents need only present "enough fact[s] to raise a reasonable expectation that discovery will reveal" that Sharp is liable for patent infringement. *See Twombly*, 550 U.S. at 556; *see also Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal of complaint where allegations "specifically identified the three accused products" and alleged that the products "meet 'each and every element of at least one claim'"); *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 1310007 at *2 (E.D. Tex. Feb. 14, 2018) ("this Court has previously recognized that an allegation a specific accused product or system infringes a patent is sufficient to meet the pleading requirements of the rules, and a plaintiff need not allege what specific components, features, or capabilities infringe"), *adopted*, 2018 WL 1306615 (E.D. Tex. Mar. 13, 2018).

Sharp argues that the asserted claims "demand a higher degree of pleading specificity" in this case because Sharp says the technology in the present case is arguably more complicated than usual. Mtn. at 9 (citing *Uniloc*, 2016 WL 7042236, at *4; *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229-LED-JDL, 2012 WL 10978964, at *3–4 (E.D. Tex. July 27, 2012)). While both decisions state that some cases *may* require a higher degree of specificity "to provide proper notice," neither *Uniloc* nor *Patent Harbor* require a higher degree of specificity than the level American Patents has met. Indeed, *Uniloc* denied a motion to dismiss infringement claims targeting enterprise-grade communications software where the complaint identified asserted patent claims; provided brief, conceptual descriptions of the accused functionality; and included pictures that illustrated the accused products and functionality. *See* 2016 WL 7042236, at *3. American Patents has done at least as much here, and "[r]equiring more would improperly and unfairly elevate the plausibility standard to a probability standard." *Salazar*, 2018 WL 1310007, at *2 (describing the holding in *Uniloc*). And *Patent Harbor* simply discussed whether the complexity of the patented technology might influence whether a plaintiff could accuse a category of products like "electric motors," or instead should have to provide examples of specific accused products—as American Patents has already done. *See* 2012 WL 10978964, at *3–4.

4

In any event, Sharp evades the Federal Circuit's recent decision in *Disc Disease*, where the Federal Circuit held that infringement allegations for one patent consisting entirely of an attached picture and two paragraphs with little detail were sufficient under the pleading standards. 888 F.3d at 1260. The entirety of the infringement allegations for one patent in *Disc Disease*, which the Federal Circuit held were sufficient, consisted of the following:

> 14. The infringing acts include, but are not limited to, using, causing to be used, making, causing to be made, importing, causing to be imported, offering to sell, causing to be offered for sale, selling, and/or causing to be sold, products, including an inflatable belt for use with support panels and marketed as the "DBB 3500", that *infringe at least one claim of the '113 Patent* in this judicial district and elsewhere within the United States.
>
> 15. Defendants are liable for infringement of the '113 Patent pursuant to 35 U.S.C. § 271. By way of example, and without limitation, Defendants products, including the DBB 3500 *meet each and every element of at least one claim of the '113 Patent, either literally or equivalently*. A non-limiting example of such product is shown in the photograph of the packaging of the DBB 3500 attached as Exhibit C.

(Ex. 1, Disc Disease Complaint at ¶¶ 14-15) (emphasis added).

Here, as noted above, American Patents has gone above and beyond what was found sufficient in *Disc Disease* by providing over twenty paragraphs of allegations against specific products (with pictures), claims, and claim elements, and by providing notice of features of the accused products involved in Sharp's infringement. Sharp cites no authority to support its contention that additional, specific elaboration is required. Sharp's contrary arguments are nothing more than attempts to force American Patents to prove its case on the pleadings. *See, e.g., Marking Object Virtualization Intelligence, LLC v. Hitachi Ltd.*, No. 2:16-cv-01055-JRG, Dkt. 88, slip op. at 5 (E.D. Tex. Sep. 25, 2017) ("At this stage in the case, the plaintiff is not required to provide an exposition of his legal argument.") (internal quotes omitted).

### B. Sharp Fails to Show That the Complaint Improperly Grouped Allegations Against Different Defendants

Independent of its arguments about the complaint's level of detail, Sharp also argues that the complaint does not adequately plead infringement by Sharp because it alleges conduct by "Defendants" collectively. (Mtn. at 6). For example, Sharp also argues that the infringement

allegations "do not "distinguish any particular acts of infringement by a particular defendant, making it impossible to discern how the infringement allegations relate specifically to Sharp." *Id*. Sharp relies solely on *M2M Solutions LLC v. Telit Commc'ns PLC*, an unpublished, out-of-district case. No. 14–1103–RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015).

But *M2M Solutions* does not help Sharp here. In *M2M Solutions*, the plaintiff based its claims of liability against a foreign parent company solely on its parent-subsidiary relationship with a U.S. defendant, without alleging that the parent company itself engaged in infringing activities. *Id.*, at *3. Here, by contrast, American Patents alleges that **all** defendants are engaged in infringing conduct, and that each Defendant is responsible for its own infringement. Unlike in *M2M Solutions*, the complaint's allegations here mean just what they say—*i.e.*, that Defendants (defined in the complaint collectively as all separate defendants, *see* Dkt. 1 at 1) have **each** infringed the asserted patents by making, using, selling, and/or offering to sell the accused products. *E.g.*, Dkt. 1 at ¶ 33. That is why, in cases like this one, courts have distinguished *M2M Solutions* and rejected similar attacks on grouped allegations. *See, e.g., Acantha LLC v. Depuy Synthes Sales, Inc.*, No. 15-cv-1257, 2016 WL 8201781, at *2 (E.D. Wis. July 28, 2016) (rejecting challenge to grouped allegations on this ground); *Sanders v. JGWPT Holdings, Inc.*, 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) ("Here, Defendants complain that they are lumped together as 'Defendants,' 'the JGWPT entities,' and 'the JGWPT defendant entities,' but these allegations are specific enough for the JGWPT Defendants to understand they are specifically implicated.").[2]

---

[2] *See also WAG Acquisition, LLC v. Multi-Media, LLC*, 2015 WL 5310203, *7-*8 (D.N.J. 2015) (denying motion to dismiss infringement allegations that referred to "Defendants" as it was clear that "Defendants" "means each individual Defendant"); *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 655 (S.D. Miss. 2013) (rejecting argument that "lump[ing] all the Defendants and accused gaming machines together" did not provide sufficient notice); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F.Supp. 2d 342, 363-64 (S.D. Tex. 2011) (denying motion to dismiss where complaint used "the collective term 'Fugro' to refer to the actions of all Fugro Defendants, without distinguishing among the acts of each defendant").

C.    <u>Sharp's Additional Arguments Regarding the '782 Patent Are Unpersuasive</u>

Sharp appears to argue that the complaint's allegations are insufficient because Sharp believes it does not infringe—a belief that is, of course, irrelevant at this stage. For example, Sharp argues that the complaint's direct infringement allegations as to the '782 Patent are flawed because Sharp thinks that the only alleged act of infringement was selling. (Mtn. at 8). Sharp says this is a problem because the exemplary claim from that patent in the complaint is a method claim, yet "[n]owhere in the Complaint does Plaintiff alleged that Sharp has performed the claimed methods." (*Id.*). Sharp is wrong for at least two reasons.

First, Sharp is not just accused of infringement by selling. Rather, the complaint alleges that "Sharp has infringed" the '782 Patent "by making, having made, *using*, importing, providing, supplying, distributing, selling, *or* offering for sale systems utilizing a method." (Dkt. 1 at ¶ 35) (emphasis added). Allegations that Sharp "uses" the accused products to infringe identified method claims are necessarily allegations that Sharp performs the methods recited in those claims using the accused products. *See CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 11569, *2 (N.D. Cal. 2013) (denying motion to dismiss direct infringement claim of a method patent because pleading the use of an accused product was sufficient to imply performance of the claimed method) (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009).

Second, American Patents' infringement allegations are not limited to infringement of method claims. American Patents alleges infringement of the '782 Patent *generally*, not just infringement of the exemplary claim (Claim 30 of the '782 Patent). (Dkt. 1 at ¶¶ 33, 34, 43, 44). That patent includes multiple apparatus claims that are infringed by Sharp's "making, having made, importing, providing, supplying, distributing, selling, or offering for sale" the accused

products, as well as by Sharp's use of the accused products. So it makes sense for American Patents to have alleged those infringing acts as well.[3]

### IV. AMERICAN PATENTS SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT

American Patents has also plausibly alleged indirect infringement. Sharp's first argument regarding indirect infringement is a tacked-on claim that "the indirect infringement claims can be dismissed with no further analysis" "[b]ecause Plaintiff's direct infringement allegations are not sufficiently pled[.]" (Mtn. at 11). But Sharp has offered no legal or logical support for this proposition. (For example, whether Sharp directly infringes a patent is an analytically distinct question from whether Sharp induces its customers to infringe that patent.) Instead, Sharp offers only a lone citation to *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). (Mtn. at 13). But Sharp's proposition does not follow from *Joy Techs*. At best for Sharp, the cited portion of *Joy Techs.* stands for the unremarkable proposition that a company cannot be liable for inducing infringement that never came to pass during the patent's term. 6 F.3d at 774-776. But that case says *nothing* about pleading standards or plausible allegations of indirect infringement, or how those standards might relate to whether a separate claim for direct infringement was properly made.

Sharp's next argument is that the complaint's indirect infringement allegations are so "threadbare" and "generic"[4] that they do not adequately state a claim under *Twombly* and *Iqbal*. (Mtn. at 11-13). For example, Sharp argues that American Patents has not plausibly alleged inducement because American Patents has not "tie[d] any specific activities undertaken by Sharp to third-party users of the accused devices that allegedly infringe the patents." (Mtn. at 12). But

---

[3] Sharp makes the puzzling argument that American Patents has not actually accused it of infringement because the complaint notes that Sharp brand TVs are made for sale at Best Buy. (Mtn. at 7.) Sharp, unsurprisingly, is wrong.

[4] Sharp also complains of the "generic nature of the indirect infringement allegations" as supposedly demonstrated by their being "copied almost verbatim across each of the eleven complaints American Patents filed with the Court." (Mtn. at 13). Sharp does not cite a single case where a court looks to a complaint in *another* case to decide a 12(b)(6) motion.

8

American Patents specifically pleaded that Sharp committed acts of inducing infringement, including, for example, "distributing instructions that guide users to use the products in an infringing matter." (Dkt. 1 at ¶ 96). That alone is sufficient. *See, e.g., Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *2 (E.D. Tex. Aug. 10, 2018) (Bryson, J., by designation) (holding that allegation that "Huawei provides manuals and instructions . . . and/or provides instructional and support materials on its website that teach and instruct its customers to operate those products in ways that practice the claimed invention" was sufficient to plead induced infringement for period in which Huawei had knowledge of the patents-in-suit); *Swipe Innovations, LLC v. Ingenico Corp.*, No. 9:12-cv-127-RC, 2013 WL 12142379, *3 (E.D. Tex. Jan. 3, 2013) (holding inducement was adequately pleaded by allegations that defendants engaged in the steps of "advising and directing [of] customers [to infringe using accused instrumentalities]," "advertising or promoting the use [of accused instrumentalities to infringe]," and "distributing instructions that guide users to use the [accused instrumentalities to infringe]).

Sharp next complains about certain inducement facts being pleaded "in the alternative." (Mtn. at 11-12). But American Patents is entitled to plead in the alternative, as is any plaintiff. Not surprisingly, Sharp provides no authority to the contrary. *See Light Transformation Technologies, LLC v. Light Science Group Corp.*, No. 2:12–CV–826–MHS–RSP, 2014 WL 935354, *2 (E.D. Tex. 2014) ("While GE asserts that the use of the phrase[] . . . 'and/or' render[s] the complaint insufficient under the rules, GE fails to provide any persuasive argument that the law requires that outcome here.")

Next, Sharp turns to the complaint's allegations of contributory infringement, claiming these allegations are insufficient. (Mtn. at 12-13). Sharp first argues that American Patents improperly alleges that the accused products have "special features" that have no substantial non-infringing uses. (Mtn. at 13). According to Sharp, "[a]lleging 'special features' of the accused products constitute a material part of the invention and are not staple articles of commerce is not legally relevant to the infringement inquiry." (*Id.*). That is wrong. The Federal

9

Circuit has made clear that a special feature of an accused product can indeed be the basis of a contributory infringement claim. *See, e.g., Ricoh Company, Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (holding that one cannot "escape liability as a contributory infringer merely by embedding [the infringing component] in a larger product with some additional, separable feature before importing it and selling it"); *see also i4i Limited Partnership v. Microsoft Corp.*, 670 F.Supp.2d 568, 578 n.5 (E.D. Tex. 2009).

Sharp also argues that American Patents' allegations are "threadbare recitals" of the required elements. (Mtn. at 13). But American Patents specifically pleaded that the accused products have special features that have no substantial use other than uses that infringe American Patents' patents. (Dkt. 1 at ¶ 98). And American Patents provided examples of such special features—improved wireless communication capabilities—used in a manner that infringes the claims of the patents-in-suit. *Id*.

Sharp says that American Patents only "defin[es] the allegedly infringing component as 'features that infringe,'" which according to Sharp "does not give fair notice of what the allegedly infringing component is." (Mtn. at 13). But American Patents' contributory infringement pleading plainly refers to a specific accused feature of the accused products. Sharp simply ignores that that feature was identified earlier in the complaint. *See, e.g.*, Dkt. 1 at ¶ 33 (identifying Sharp's 55" Class 4K HDR Smart TV family of products as some of Sharp's "products and/or systems" "that include 802.11ac capabilities."). This Court has found similar allegations sufficient to state a claim for contributory infringement. *See* <u>Uniloc</u>, 2016 WL 7042236, at *4 (denying motion to dismiss contributory infringement allegations that accused products include a "software module that allows its enterprise clients to initiate a conference call from an individual or group instant message window").

Finally, Sharp argues that the complaint's indirect infringement allegations as to pre-suit conduct should be dismissed because "the Complaint fails to allege that Sharp had knowledge of the Asserted Patents prior to the filing of the Complaint." (Mtn. at 13). Sharp is wrong for two reasons.

First, American Patents plausibly alleged that Sharp was willfully blind to the existence of the asserted patents before the suit was filed, and an allegation of willful blindness is an allegation of knowledge. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011). As Sharp acknowledges, American Patents pleaded that Sharp had "a policy or practice of not reviewing the patents of others (*including instructing its employees to not review the patents of others*), and thus has been willfully blind of American Patents' patent rights" in the pre-suit period. *Id* at 14 (emphasis added). American Patents alleged knowledge in the pre-filing period because it believes that discovery will show that Sharp affirmatively instructed its employees to avoid reading the patents of others. And American Patents has good reason to believe this: as Professor Mark Lemley has explained, companies like Sharp are notorious for adopting such policies:

> *Virtually everyone does it*. They do it at all stages of endeavor. Companies and lawyers tell engineers not to read patents in starting their research, lest their knowledge of the patent disadvantage the company by making it a willful infringer. . . . This *intentional ignorance* of patent rights in the hands of others has led some to label major manufacturers in the IT industries "patent pirates."

*See, e.g.*, Ex. 2 at 21-22 [M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008)] (emphasis added).[5] That is sufficient at the pleading stage. *See* Fed. R. Civ. P. 11(b)(3)

---

[5] *See also* Edwin H. Taylor & Glenn E. Von Tersch, *A Proposal to Shore Up the Foundations of Patent Law that the Underwater Line Eroded*, 20 Hastings Comm. & Ent. L.J. 721, 737 (1998) ("As matters now stand many companies discourage employees from reading patents. This presumably lessens the chance that the company will be found to have knowledge of a patent."); Dennis Fernandez, *Move Over Letterman: Top 10 Most Common IP Management Mistakes for New Companies*, Pat. Strategy & Mgmt., July 1, 2003, at 3 ("Additionally, in many cases it may be appropriate for companies, as a matter of policy, to discourage looking at issued patents owned by other entities so as to avoid awareness of potentially infringing patents."); Mark A. Lemley & Ragesh K. Tangri, *Ending Patent Law's Willfulness Game*, 18 Berkeley Tech. L.J. 1085, 1100-01 (2003) ("[I]n-house patent counsel and many outside lawyers regularly advise their clients not to read patents if there is any way to avoid it. What you do know will certainly harm you, they reason, so it is generally better not to know. Thus, from the perspective of a potential infringer, ignorance is bliss."); Timothy B. Lee, *It's Normal for Software Companies to Ignore Patents*, Forbes Contributor post (2/27/2012) ("[A]lmost all software companies ignore their competitor's patents."); Tom Krazit, "*Why Tech Companies Want Engineers To Ignore Patents When Designing Products*," Gigaom, Nov. 2, 2011 ("[S]everal companies in the tech industry *actively discourage* their engineers from thinking about whether

(allowing allegations of fact on information and belief if they "will likely have evidentiary support after reasonable opportunity for further investigation or discovery").

Indeed, based on the same facts, this Court has previously denied a motion to dismiss the same allegation. *See Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 938 (E.D. Tex. 2016) (Bryson, J., by designation) ("Taking all inferences in Script's favor, it has pleaded that defendant took an affirmative action to avoid gaining knowledge of the patents in suit—ignoring all patents as a matter of policy. . . . Script has sufficiently pleaded inducement . . . .") (emphasis added); *but see Nonend v. Apple, Inc.*, Case No. 2:15-cv-00466-JRG-RSP, 2016 WL 1253740, *2-3 (E.D. Tex. Mar. 11, 2016).

Second, as for the '304 Patent, American Patents provides a second allegation of pre-suit knowledge by identifying a specific employee (John M. Kowalski) involved in the prosecution of a patent application assigned to Sharp Laboratories of America, Inc. (Dkt. 1 at ¶ 55). American Patents specifically alleged that Mr. Kowalski and attorney David C. Ripma have had knowledge of the '304 Patent at least as of November 14, 2008. *Id*.

Sharp argues that "there is no factual allegation to impute knowledge of employees from Sharp Laboratories of America to Sharp Corporation – the named defendant." (Mtn. at 14). But it is certainly plausible that Sharp obtained knowledge of the patent as alleged through its subsidiary. Courts have held in a similar scenario that knowledge acquired through the prosecution of a patent owned by a defendant's predecessor can plausibly support allegations concerning the knowledge of the defendant itself. *See Cloud Farm Assocs. V. Volkswagen Group of Am., Inc.*, No. 10-502-LPS, 2012 WL 3069390, at *3-4 (D. Del. July 27, 2012) (denying motion to dismiss willfulness allegations where complaint alleged that "the USPTO listed the [asserted patent] as a cited reference" "as part of an office action for" a patent of a predecessor to the defendant). Here, it is just as plausible—if not more plausible—that Sharp would have knowledge of its subsidiary's patent prosecution filings.

---

concepts and products under development might have already been patented . . . .") (emphasis added).

## V.   AMERICAN PATENTS SUFFICIENTLY PLEADED WILLFULNESS

According to Sharp, American Patents' willfulness allegations should be dismissed because they supposedly provide only "conclusory" and "boilerplate" assertions of willful infringement and do not "allege that Sharp had knowledge of any of the patents prior to the filing of this suit." (Mtn. at 15, 16). Sharp's arguments are wrong—American Patents plausibly alleged willful infringement, and pre-suit knowledge is not required to state a claim for willfulness. And even if pre-suit knowledge were required, American Patents has adequately alleged such knowledge.

### A.   American Patents Plausibly Alleged That Sharp Intentionally Infringed

American Patents plausibly alleged willful infringement by Sharp. Willfulness requires proof that the defendant "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement." *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (rejecting challenge to jury instruction on willfulness). The complaint alleged that Sharp had knowledge of the patents, that Sharp's customers are directly infringing, and that Sharp has encouraged (and continues to encourage) them to infringe. (Dkt. 1 at ¶¶ 25, 26, 33, 34, 47, 48, 60, 61, 96-100, 102). These allegations are sufficient to state a claim for willful infringement at the pleading stage. *See, e.g., Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 939 (E.D. Tex. 2016) (Bryson, J., by designation) (rejecting argument that plaintiff failed to plead facts showing that defendants' "actions constituted an unjustifiably high risk of infringement" because plaintiff "has pleaded knowledge of the patent, that defendants' customers are infringing, and that the defendants encouraged this infringement").

Sharp suggests that American Patents' allegations are flawed because they do not show "egregious" behavior. (Mtn. at 15). But whether infringing conduct was sufficiently "egregious" is not an element of willful infringement at all. Instead, "egregiousness" is for the court to consider in exercising its discretion to enhance damages after the jury's finding of willfulness. *See Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, 2018 WL 2149736,

13

at *8 (E.D. Tex. 2018) ("the jury must decide whether the infringement was *intentional*, and then the court must decide whether the intentional conduct was *egregious* enough to justify enhanced damages") (emphasis added).

*Halo* did state that enhanced damages awards are meant to be a "sanction for egregious infringement behavior." 136 S. Ct. at 1932. But that does not mean egregiousness is an element of willful infringement. Indeed, "*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer" is sufficient to establish willfulness and allow the court to consider enhancing damages. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotes omitted). For that reason, in *Ericsson* this Court rejected a defendant's challenge to the jury's willfulness verdict specifically because the defendant's "assumption that a jury's willfulness finding cannot stand without egregious or shocking infringement behavior is inconsistent with the Federal Circuit's decision in *Artic Cat*." *Ericsson*, 2018 WL 2149736, at *9.

B.  Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness

Sharp also argues that American Patents' willful infringement allegation is flawed because, according to Sharp, willful infringement must be based on pre-suit knowledge of the patents. (Mtn. at 15). That is not the law: "there is nothing in *Halo* suggesting that pre-suit knowledge is required for willfulness. . . . Culpability can arise pre- or post-suit." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017), *adopted,* No. 2:16-CV-52-JRG-RSP, 2017 WL 1109875 (E.D. Tex. Mar. 24, 2017); *see also Plano Encryption Tech., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG at 13 (E.D. Tex. Sept. 22, 2017) ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement.").

For these reasons, even if the complaint contained no pre-suit knowledge allegations, American Patents has stated a claim for willfulness by pleading that the complaint put Sharp on

notice of the patents and that Sharp's infringement is ongoing. (Dkt. 1 at ¶¶ 33, 34, 42, 47, 48, 54, 55, 60, 61, 67, 96-100, 102). No more is required. *See, e.g.*, *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 215-CV-1274-JRG-RSP, 2016 WL 4778699, at *7 (E.D. Tex. Aug. 19, 2016) *adopted* No. 2:15-CV-1274-JRG-RSP, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) ("The Court also finds the complaint states a claim to post-suit willful infringement… The complaint alleged that despite these facts, the [] Defendants have not ceased their infringing activities."); *see also WordCheck Tech, LLC v. Alt-N Techs., Ltd.*, No. 6:10-cv-457, Dkt. 755, at 3 (E.D. Tex. July 17, 2012) (holding that an allegation of notice of the patents-in-suit and that continued infringement would be willful is sufficient at the pleading stage).

      C.      <u>Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here</u>

Even if Sharp were correct about the law, Sharp would still lose because American Patents has adequately pleaded pre-suit knowledge for all of the asserted patents. As Sharp acknowledges (and as explained in more detail in Section IV, *supra*), American Patents pleaded that Sharp had "a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' rights under the patents." (Mtn. at 14). That is sufficient at the pleading stage. *See* Fed. R. Civ. P. 11(b)(3) (allowing allegations of fact on information and belief if they "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"); *see also Blitzsafe Texas*, 2016 WL 4778699, at *6 (discussing applicability of willful blindness to allegations of pre-suit willful infringement).

## VI.    IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

To the extent that the Court rules that any of American Patents' claims are not adequately pleaded, American Patents requests an opportunity to amend its complaint to address any deficiencies that the Court finds, or, at a minimum, to incorporate its P.R. 3-1 infringement contentions by reference once those are submitted. A separate motion to amend is not required. *See, e.g., Harrison v. Procter & Gamble Co.*, 7:06-cv-121, 2007 WL 431085, at *5–6 (N.D. Tex.

Feb. 8, 2007) (granting leave to amend complaint that was requested in the opposition to the motion to dismiss).

Rule 15(a) expressly provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). As the Fifth Circuit has explained, "the Rule 'evinces a bias in favor of granting leave to amend.'" *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x 205, 208 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."). "Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.*; *see also SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH,* 839 F.3d 422, 428 (5th Cir. 2016) (holding that the district court abused its discretion by failing to grant leave to amend the complaint for the first time and before the deadline to amend had passed).

## VII.  CONCLUSION

For the foregoing reasons, the Court should deny Sharp's Motion.

Dated: February 26, 2019

Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON

16

& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
The People's Petroleum Building
102 N College Ave., 13th Floor
Tyler, Texas 75702
(903) 593-7000

*Attorneys for American Patents LLC*

17