# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

AMERICAN PATENTS LLC,

               *Plaintiff*,

    v.

HISENSE CO. LTD., ET AL.,

               *Defendants*.

Case No. 4:18-cv-00768-ALM

**Jury Trial Requested**

**DEFENDANTS TOP VICTORY ELECTRONICS (TAIWAN) CO., LTD.,
TPV ELECTRONICS (FUJIAN) CO., LTD., AND TPV TECHNOLOGY, LTD.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

## I.       PLAINTIFF FAILS TO SUFFICIENTLY PLEAD DIRECT INFRINGEMENT

Plaintiff American Patents ("AP" or "Plaintiff") incorrectly alleges that to state a plausible claim for direct infringement, it need merely allege a product infringes a specific claim and cite a website illustrating the product.  (Dkt. 72 at 2-3.)  This utterly ignores this district's admonition that determining the level of specificity sufficient for notice is a "very 'context specific task.'"  *Uniloc USA Inc. v. Avaya Inc.,* 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In this case, the claims are complex.  The Complaint provides no meaningful notice of where, when, or by whom the alleged infringement occurred, or what features or functionality of TPV's products allegedly infringe.  The purported "thirty paragraphs of allegations against specific products (with pictures), claims, and claim elements" (Dkt. 72 at 5) amount to nothing more than repetition of claim language, legal conclusions, and superficial images of televisions.  These allegations do not provide adequate notice of how TPV is alleged to infringe the claims.

*Disc Disease* and *Dynocom*, which Plaintiff relies upon in its Opposition, are inapposite. The claims in *Disc Disease* involved a simple mechanical medical device—a spinal brace.  The court found that a photograph of the allegedly infringing spinal brace was sufficient to put the defendant on notice because the photograph itself left little doubt as to that plaintiff's theory of infringement.  Unlike this case, *Disc Disease* involved the type of "tangible inventions and relatively straightforward claims" identified in *Uniloc*; such patents "may require less detail to state a claim and provide fair notice to the accused infringer."  *Uniloc*, 2016 WL 7042236, at *3; *Disc Disease*, 888 F.3d at 1257.  Similarly, *Dynocom* involved a concrete, tangible invention and relatively straightforward claims.  *See Dynocom Indus. v. Mainline Auto. Equip. Pty. Ltd.*, No. 2:16-cv-00553, 2017 WL 1109893, at *1 (E.D. Tex. Feb. 14, 2017).  In fact, the *Dynocom*

defendants did not claim lack of notice, but rather that the website incorporated by reference into the complaint contradicted Dynocom's allegations.  *See Dynocom*, No. 2:16-cv-00553, Dkt. 45, at 4.  The court concluded that the alleged conflict did not render the complaint insufficient.  *Id.* That holding, involving significantly different circumstances, provides no meaningful guidance here.

In contrast, the asserted patents in this case are directed to precisely the type of "nebulous, less tangible inventions such as computer software methods [that] may require a higher degree of specificity to provide proper notice to the defendant."  *Uniloc*, 2016 WL 7042236, at *3 (internal quotations omitted).   None of the asserted claims recite anything that would be recognizable from the website photographs of televisions that Plaintiff includes in its complaint and argues go "above and beyond what was found sufficient" in *Disc Disease*.   (Dkt. 72 at 5.)  As just a few examples,'304 Patent claim 1 includes the limitation, "wherein the training structure of each frame includes a predetermined signal transmission matrix at a respective sub-channel, each training structure adjusted to have a substantially constant amplitude in a time domain . . .;" '782 Patent claim 30 recites "synchronizing the received demodulated frame to the transmitted frame such that the data symbols are synchronized in the time domain and frequency domain;" '458 Patent claim 1 recites "each OFDM modulator producing a frame having at least one inserted symbol, a plurality of data symbols, and cyclic prefix;" '090 Patent claim 1 recites "receiving, at a network node that is pre-authorized to access the network resource, a request to allow a first user to assume an identity of the network node . . .;" and '655 Patent claim 5 recites "accessing, by the user, one of the set of network resources that the network element is pre-authorized to access based on the user's assuming the identity of the network element."  The Complaint provides no specificity as to what aspects of TPV's

products are alleged to include such structures or perform such methods, the photographs of televisions in the Complaint fail to illustrate these structures and methods, and Plaintiff's conclusory allegations are implausible.

Further, Plaintiff's only response to TPV's criticism that the Complaint fails to identify the multiple communicating devices that are required to perform certain asserted claims is to argue that claim construction need not be considered at the pleading stage.  (Dkt. 72 at 6.)  But it is readily apparent from a plain reading of the claims that more than one device is required when '782 Patent claim 30, for example, requires practicing a method including: (1) "producing a frame of data," (2) "transmitting the frame over a channel," and (3) "receiving the transmitted frame."  Are TPV's televisions accused of producing and transmitting the frame or of receiving the transmitted frame?  If the former, who receives it, and if the latter, who transmits it?  The Complaint is insufficient on its face when it alleges that a single television practices a method that indisputably requires communications between devices.  Such an allegation is implausible on its face and could not be fixed by claim construction.

Similarly, Plaintiff ignores TPV's criticism that asserted claim 5 of the '655 Patent also requires two devices that communicate with each other.  The claim requires a "network element" (i.e., the first device) that receives a request from a user (*i.e.,* at the second device) to connect to it and assume its identity.  (*See* Dkt. 1 at ¶¶ 75-77.)  The user at the second device then accesses a "set of network resources."  (*Id.* at ¶ 78.)  Again, however, Plaintiff does not allege the accused products, standing alone, meet these limitations, nor could it without accusing a second device. (*See id.* at ¶¶ 71-78; Dkt. 65 at 6-8.)  Plaintiff ignores TPV's similar arguments relating to the Complaint's allegations with respect to the '458 and '655 Patents.  (Dkt. 65 at 7 n1, 8.)  A

Complaint cannot state a plausible claim for patent infringement when it completely disregards the limitations of the asserted claims.

Plaintiff also fails entirely to respond to TPV's criticism that the Complaint cannot, as a matter of law, allege direct infringement of method claims by TPV, a foreign entity, by the mere sale or importation of televisions. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)"). (Dkt. 65 at 8-9.)  Any allegation that TPV itself practices, in the United States, method claim 5 of the '655 Patent, method claim 1 of the '909 Patent, or method claim 30 of the '782 Patent, even if included in the Complaint, would not be plausible for the TPV entities, which are not located in this country. (Dkt. 65 at 8-9.)  No amendment to the Complaint can fix these fundamental flaws, and the allegations of direct infringement should be dismissed with prejudice.

## II.     PLAINTIFF FAILS TO SUFFICIENTLY PLEAD INDIRECT INFRINGEMENT

### A.     Plaintiff Fails to Sufficiently Plead Underlying Acts of Direct Infringement, Which is a Prerequisite for Indirect Infringement

Plaintiff ignores entirely TPV's argument that the Complaint fails to allege that any third party directly infringes the asserted patents, let alone that a third party is induced to do so by TPV. (Dkt. 65 at 9-10.)  Indeed, the Complaint alleges (by copying and pasting patent claims) that infringement arises from using certain products in a specific way, e.g., "synchronizing a Multi-Input Multi-Output (MIMO) Orthogonal Frequency Division Multiplexing (OFDM) system in time and frequency domains" (Dkt. 1 at ¶ 35), using "an Orthogonal Frequency Division Multiplexing (OFDM) transmitter" (*id*. at ¶ 49), "synchronizing a communication system" (*id*. at ¶ 62), "arranging a network element in a network, the network element being pre-authorized to access a set of network resources" (*id*. at ¶ 75), or using "a method for providing

access to a network resource." (*Id*. at ¶ 86.)  Yet, as discussed above, these claims require multiple network elements acting together in concert, and the Complaint nowhere alleges that any customer or end user configures or operates such communication or network systems, such as by purchasing and configuring third-party networking hardware and software or by subscribing to and pre-authorizing third-party network services to interoperate with the accused products.  Nor does the Complaint anywhere allege that TPV provides such third-party hardware, software, or services.  Thus, the Complaint does not plausibly allege facts to support an inference that end-users use the accused products with any third-party resources to create a system that could perform any underlying act of direct infringement.  Thus, there is no plausible allegation of the predicate act of direct infringement, and "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement."  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).

Although TPV raised this issue in its motion, Plaintiff offered no response because it is unable to do so, demonstrating that Plaintiff also would not be able to remedy this fundamental deficiency by amendment.  For at least this reason, the indirect infringement allegations should be dismissed with prejudice.

**B.      Plaintiff's Sweeping Assertion That All Large Companies Are Blind To Infringement Fails To Satisfy The Pre-Suit Knowledge Requirement**

The Complaint alleges that "Defendants have a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights."  (Dkt. 1 at ¶ 99).  To justify this allegation as sufficient to infer pre-suit knowledge, Plaintiff cites a law professor's writing that large companies "are notorious for adopting head-in-sand policies."  (Dkt. 72 at 11.)  The article Plaintiff cites does not even mention TPV.  Under Plaintiff's reasoning, the boilerplate

accusation in paragraph 99 of the Complaint would suffice to plead pre-suit knowledge in every case against any large company – vitiating the specific knowledge requirements of indirect infringement.  This is plainly insufficient.

### C.     Plaintiff Does Not Adequately Plead the Remaining Elements of Induced Infringement

Plaintiff asserts it need only plead that TPV "distribut[ed] instructions that guide users to use the products in an infringing manner" to satisfy the specific intent prong of inducement. (Dkt. 72 at 8.)  The cases Plaintiff cites, however, do not support its argument. Each case involves pleadings that provide far more detail than what Plaintiff alleges here.  For example, in *CyWee*, plaintiff "describ[ed] three user manuals that teach allegedly infringing behavior, and attached each," and "describe[ed] exemplary allegations of direct infringement in great detail." *CyWee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *4 (E.D. Tex. Aug. 10, 2018). The Court specifically noted that "[t]his is not a case in which the complaint merely cites conclusory allegations that mirror the legal standard," finding that CyWee, "unlike Core Wireless, has alleged 'facts identifying … how those instructions direct customers to use those products in an infringing manner.'" *Id.* (citing *Core Wireless*, 2015 WL 5000397, at *4).  Plaintiff's Complaint, much like that in *Core Wireless*, makes only conclusory allegations, fails to identify a single example of instructions provided to customers, and fails to identify what behavior or functionality is at issue even at a basic level.

### D.     Plaintiff Does Not Adequately Plead the Remaining Elements of Contributory Infringement

Plaintiff argues that the relevant inquiry for contributory infringement is whether the "accused products have special features that have no substantial use other than uses that infringe American Patents' patents."  (Dkt. 72 at 10.)  Plaintiff then argues that it provided examples of "special features," such as "improved wireless communication capabilities and initiation and/or

control of Internet streamed content."  (*Id.* (citing Dkt 1 at ¶¶ 95, 98).)  These generic phrases, in

fact, identify no "special features" of the accused products.  Rather, they are merely paraphrases

of the titles and abstracts of the patents-in-suit, which do not make out a plausible, factually

supported claim that there is an absence of non-infringing uses.  *See Soverain Software LLC v.*

*Euromarket Designs, Inc.*, 6:12-cv-145, Doc. 54, slip op. at 9 (E.D. Tex. Mar. 21, 2014)

(dismissing claim where "the complaint fails to provide any factual support for the conclusion

that the accused systems and methods cannot be used for any other purpose but infringement").

Moreover, the Complaint nowhere even alleges that the accused products with "wireless

communications capabilities" could not also wirelessly communicate with older routers that do

not use OFDM modulators and MIMO configurations as claimed in the patents.  (Dkt. 1 ¶¶ 35,

49-52, 63-66.)  Nor does it allege that the accused products could not initiate streamed internet

content from sources that do not require "assuming the identity of the network node that is pre-

authorized," as the claims require.  (Dkt. 1 ¶¶ 77-78, 89.)  Plaintiff alleges that the Court cannot

resolve such "factual disputes" at the motion-to-dismiss stage and thus cannot dismiss these

allegations.  (Dkt. 72 at 10.)  But the Court is not precluded from taking notice of the notoriously

well-known fact that WiFi communications and network multimedia were well known by 1998

or 2001, the dates to which the asserted patents claim priority.  *See Lovelace v. Software*

*Spectrum, Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996) ("Normally, in deciding

a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated

in the complaint and the documents either attached to or incorporated in the complaint. However,

courts may also consider matters of which they may take judicial notice.").  In fact, three of the

asserted patents themselves admit that both OFDM and MIMO systems existed in the prior art

and that the alleged novelty arises from addressing certain issues that arise when combining

them.  '304 Patent at 1:55-2:3; '782 Patent at 1:55-2:3; '485 Patent 1:52-67.  Similarly, the other two asserted patents admit that multimedia resources on the internet and methods of accessing them that did not require assuming an identity of another network node were well known.  *See, e.g.,* '090 Patent at 1:29-38, 1:59-61; '655 Patent at 1:25-35, 1:57-59.  Thus, the substantial non-infringing uses TPV points out are apparent from the face of the Complaint, the patents themselves, or from other well-known public facts that the Court may take notice of, and these substantial non-infringing uses preclude any plausible inference of contributory infringement.

In addition, the Complaint also fails to allege who supplied the components that allegedly contain the "special features" and instead refers to the defendants collectively.  *See, e.g.*, *M2M Solutions LLC v. Telit Communs. PLC,* 2015 U.S. Dist. Lexis 102349, at *13 (D. Del. Aug. 5, 2015) (contributory infringement claim insufficient because allegations directed to defendants collectively).  Thus, Plaintiff's contributory infringement claims should be dismissed.

## III.    PLAINTIFF'S CLAIMS OF WILLFUL INFRINGEMENT SHOULD BE DISMISSED

### A.    The Complaint Fails to Plausibly Allege Willful Infringement

Plaintiff inaccurately states the law of willful infringement, asserting it is sufficient to merely allege that TPV "had knowledge of the patents, that TPV's customers are directly infringing, and that TPV has encouraged (and continues to encourage) them to infringe." (Dkt. 72 at 13.)  In support, Plaintiff cites an outdated case.  (*Id.* (citing *Script Sec. Sols. LLC. v. Amazon.com*, Inc., 170 F. Supp. 3d 928, 939 (E.D. Tex. 2016)).)  Plaintiff's position ignores the later clear directive by the Supreme Court that a willful infringement claim requires that the alleged infringer engaged in "egregious … misconduct beyond typical infringement."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1935 (2016).

Plaintiff argues that "egregious" conduct is not an element of willful infringement and is only relevant to awarding enhanced damages. (Dkt. 72 at 13-14.) That distinction is unsupported by *Halo* or its progeny. Plaintiff's reliance on *Ericsson v. TCL* and *Arctic Cat* is misplaced. Those cases deal with the issue of jury instructions under *Halo, i.e.,*whether egregious conduct is a factual inquiry to be put to the jury rather than the court. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *8 (E.D. Tex. May 10, 2018). That the court in *Ericsson* opined, in dicta, that determination of egregious conduct is better reserved for the court does not obviate egregious conduct as a pleading requirement for willful infringement. *Id.* Further, *Arctic Cat's* affirmation that "*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness" does not diminish *Halo's* requirement for pleading egregious conduct. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

The Court should further strike Plaintiff's prayer for enhanced damages for willful infringement under Fed. R. Civ. P. 12(f) because it is not supported by the factual allegations. (*See* Dkt. 1 at p. 48 (seeking increased damages under 35 U.S.C. § 284).) *See, e.g., Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 n. 8 (5th Cir. 1995) ("[A]bsent any factual allegations however, the prayer standing alone cannot support a cause of action.") (quoting the district court's holding in the lower proceeding).

### B.    Willful Infringement Claims Must be Grounded in Pre-Filing Conduct

Plaintiff incorrectly asserts that pre-suit knowledge is no longer required to state a claim for willfulness. (Dkt. 72 at 14.) But *Halo* did nothing to alter this aspect of *In re Seagate*, as another court in this district previously held:

> Under *Seagate*, "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."

> *In re Seagate*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *overruled on other grounds by Halo*, 136 S. Ct. 1923.  Therefore, ***pre-suit knowledge of the asserted patent is generally required to maintain a claim of willfulness***.  *Id.; see also Touchscreen Gestures LLC v. Research in Motion Ltd.*, No. 6:12-cv263, 2013 WL 8505349, at *2.

*Opticurrent, LLC v. Power Integrations, Inc*., No. 2:16-cv-325-JRG, Dkt. 34, slip. op. at 3 (E.D. Tex. Oct. 19, 2016) (emphasis added).  See also *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.  *See Halo*, 136 S. Ct. at 1932-33 (discussing knowledge requirement for intent).").

Further, plaintiff's reliance on *Huawei Techs.* is misplaced.  Huawei's willfulness allegation survived dismissal because in the complaint, "Huawei allege[d] that it contacted T-Mobile 18 months prior to filing these lawsuits, seeking to negotiate a license to Huawei's patent portfolio," that it "informed T-Mobile that its services infringed Huawei's intellectual property rights and sought to enter a non-disclosure agreement to permit the parties to discuss Huawei's Licensing Program and its detailed analyses of T-Mobile's infringement," and that "T-Mobile allegedly refused to negotiate or sign an agreement."  *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, slip. op. at 13 (E.D. Tex. Feb. 21, 2017).  In the present case, by contrast, Plaintiff alleges no facts whatsoever that could plausibly demonstrate pre-suit willfulness.

Moreover, Plaintiff's argument that it is sufficient to allege willful blindness, with no factual support, does not carry the day under current law. *See Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018) (finding willful blindness insufficient to show egregious behavior).  The willfulness allegations should therefore be dismissed.

Dated: March 5, 2019

Respectfully submitted,

By: */s/ Nicholas J. Whilt*

Mark Samuels (Cal. Bar. No. 107026)
msamuels@omm.comyagura@omm.com
Brian M. Berliner (Cal. Bar No. 156732)
bberliner@omm.com
Nicholas J. Whilt (Cal. Bar No. 247738)
nwhilt@omm.com
Brian M. Cook (Cal. Bar No. 266181)
bcook@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

*Attorney for Defendants*
*Top Victory Electronics (Taiwan) Co. Ltd.,*
*TPV Electronics (Fujian) Co. Ltd., and*
*TPV Technology Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have

consented to electronic services are being served with a copy of this document via Court's

CM/ECF system per Local Rule CV-5(a)(3) on this 5th day of March, 2019.

*/s/ Nicholas J. Whilt*
Nicholas J. Whilt
