IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC, | CIVIL ACTION NO. 4:18-cv-768-ALM |
| Plaintiff, | |
| v. | |
| HISENSE CO. LTD., et al., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**AMERICAN PATENTS' SUR-REPLY TO SHARP'S MOTION TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I.      THE COMPLAINT SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

   A.      The Complaint Pleads a Claim for Direct Infringement

Sharp says that, because the patents involve allegedly complex technology, the complaint must provide a "greater degree of specificity" compared to less complex patents. Reply at 1-3. In doing so, Sharp attempts to distinguish *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), and *Dynocom Industries v. Mainline Automotive Equipment Pty. Ltd.*, No. 2:16-cv-553, Dkt. No. 45 (E.D. Tex. Feb. 14, 2017), as cases involving purportedly less complex technology.[1] But Sharp does not actually dispute that American Patents' complaint ***does*** provide significantly more detail than the complaints in either of those cases. *See* Opp'n at 3.

Sharp fails to cite a single relevant case in which a court dismissed a complaint as detailed as American Patents' complaint, on the grounds that the complexity of the patented technology demanded more. *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34-LED-JDL, 2011 WL 13223466 (E.D. Tex. Sept. 29, 2011), cited for the first time on reply, is neither legally helpful to Sharp (the Court denied the motion to dismiss) nor factually relevant under Sharp's own framework (the case involved mechanical technology). In that case, the Court's dicta regarding more "complex" inventions was directed to the need to identify accused products with sufficient specificity, as opposed to accusing vague categories of products. *See id.* at *3. But American Patents' complaint identifies specific accused products, not just vague categories (*see* Opp'n at 5), thus easily meeting the "greater degree of specificity" referenced in *Effectively Illuminated Pathways*.

Likewise, *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018), is inapposite. In that case, the complaint alleged that the

---

[1] To the extent Sharp is suggesting *Dynocom* is distinguishable because the complaint in that case "includes descriptions of special features of the accused product," *see* Reply at 1, American Patents' complaint also identifies special features of the accused products. *See* Dkt. 1 at ¶ 98.

1

accused product required a third-party app to be "integrated" with the Defendant's separate system in order to directly infringe. *See* No. 2:18-cv-00300-JRG, Dkt. 1, complaint at ¶¶ 44-45. Because the complaint relied on a third-party app that was alleged to be operated by a non-party user, but did not allege that the defendant owned or controlled the app, the Court held the complaint did not allege a single entity performed every claim limitation. *Chapterhouse, LLC*, 2018 WL 6981828, at *4. That is not what is happening here; rather, American Patents has alleged acts committed by or imputable to Sharp in connection with the accused Sharp products.

And Sharp ignores that this Court has denied motions to dismiss in cases involving telecommunications technology where the complaints contained significantly less detail than American Patents' complaint. For example, the Opposition cited this Court's decision in *Salazar*, which involved a five-page complaint alleging infringement in connection with mobile phones. Opp'n at 4; *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, Dkt. 44 (E.D. Tex. June 15, 2017). The *Salazar* complaint did not contain any images at all, and was far less detailed overall than the complaint here. *Id.* Yet this Court denied the defendant's motion to dismiss the direct infringement allegations. 2018 WL 1310007, at *2 (E.D. Tex. Feb. 14, 2018).

Next, Sharp asserts that, absent an allegation that Sharp itself makes, uses, sells, or offers to sell an accused product in the U.S., Sharp cannot be liable for direct infringement. *See* Reply at 2, 3-5. Leaving aside Sharp's improper claim construction arguments,[2] Sharp reads into the complaint allegations that are not there. Nowhere does the complaint allege that "a single television" (presumably operated by a single actor) necessarily performs all steps of the asserted methods, as Sharp represents. Reply at 2; *see, e.g.*, Dkt. 1 ¶ 33. Rather, the allegations plausibly support multiple theories of direct infringement that are not limited to a single-actor-single-

---

[2] Sharp asserts that the claims require multiple devices. *See* Reply at 2. This is an improper attempt to argue claim construction at the motion to dismiss stage. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).

television theory, including that Sharp jointly infringes in connection with Hisense or other manufacturers or affiliates, with retailers and other business partners, and/or with customers or end-users, using one or more accused instrumentalities.[3]

To be liable for direct infringement, each step of a claimed method must be "performed by **or attributable to** a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (emphasis added). An entity will be liable for another's acts: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* at 1022-23. Here, the complaint pleads plausible allegations of direct infringement under at least a theory of direction or control. *See, e.g.*, Dkt. 1 ¶ 23 ("the right to relief asserted against defendants jointly and severally arises out of the same series of transactions or occurrences . . . ."). In particular—and as Sharp acknowledges (Reply at 4-5)—the complaint alleges that "Sharp directs, contracts with, and/or encourages manufacturers (e.g., Hisense) to make, use, offer to sell, sell or import accused products under the Sharp brand for Best Buy." Dkt. 1 ¶ 22; *id.* ¶ 6 ("The [Hisense defendants] are an interrelated group of companies which together comprise one of the world's largest manufacturers of televisions and one of the leading sellers of televisions in the United States, including the Sharp brand made for Best Buy . . . ."). In addition, the complaint alleges Sharp "took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner than infringes," including, for example, by "making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing their affiliates, or third-party manufacturers, shippers,

---

[3] Relatedly, Sharp offers no support for its proposition that allegations of infringement against a foreign entity are implausible solely based on the location of that entity's headquarters. *See* Reply at n.2. At this stage, the complaint's factual allegations must be taken as true.

distributors, retailers, or other persons acting on their or their behalf, to import, sell, or offer to sell the accused products in an infringing manner." Dkt. 1 ¶ 97. Together, these allegations support a theory of direction or control, including via contractual relationships.

Further, the complaint pleads a plausible theory of direct infringement based on Sharp's direction or control of end-users. "[E]vidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 1:18-cv-452, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) (Bryson, Cir. J.) (citing *Akamai* and *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017)). The complaint alleges that Sharp "took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes," including "advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner." Dkt. 1 ¶ 96. In *IOENGINE*, similar allegations were sufficient to plead a claim of joint infringement between the defendant and its customers.[4]

### B. The Complaint Sufficiently Pleaded Infringement of the '782 Patent

Next, Sharp argues American Patents is "pivot[ing]" to assert that Sharp infringes by using the accused products. Reply at 3-4. This is an odd accusation. The complaint has not changed since it was filed, and it has always alleged direct infringement on the basis of Sharp's

---

[4] 2019 WL 330515, at *3; *see also Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) (plaintiff plausibly alleged direct infringement by defendants' providing instructions and advertising to customers concerning how to use accused video game consoles in an infringing manner)

4

use of the accused products and systems. *See, e.g.*, Dkt. 1 at ¶ 35.

In reality, it is Sharp that now tries to pivot. In its opening brief, Sharp focused on the allegations of sales. *See* Mtn. at 8. Now forced to acknowledge that "use" is alleged, Sharp changes tack and argues for the first time that the "use" allegations are insufficiently detailed. Reply at 3. This new argument has been waived for being made for the first time on reply. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 Fed. Appx. 307, 315 (5th Cir. 2008); *Saint Lawrence Comms. LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712153, at *4 n.4 (E.D. Tex. Feb. 6, 2017). In any case, the complaint plausibly alleges that Sharp is liable for direct infringement, under a single-actor and/or joint infringement theory. *See supra*. As the opposition explained, the complaint's "use" allegations sufficiently alleged infringement of the exemplary method claims. Opp'n at 7-8 (citing *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 5:11-cv-06635-LHK, 2013 WL 11569 (N.D. Cal. 2013)). Sharp tries to distinguish *CreAgri* because it predated Form 18's elimination. Reply at 4. But *CreAgri*'s relevant portion did not rely on Form 18 at all. 2013 WL 11569, at *2.

Sharp also argues, for the first time on reply, that "Plaintiff must be held to the actual claims it asserted[.]" Reply at 4. This new argument is waived. *See, e.g.*, *Gillaspy*, 278 Fed. Appx. at 315. It is also wrong: allegations based on claims not expressly listed in the complaint are not somehow dropped from the case. *See, e.g.*, *Atwater Partners of Tex. LLC v. AT&T, Inc.*, No. 2:10–cv–175–TJW, 2011 WL 1004880, *3 (E.D. Tex. 2011) (rejecting defendant's contention that patentee had to identify in the complaint every accused product and each asserted claim); *Orion Energy Sys. Inc. v. Energy Bank Inc.*, No. 16-C-1250, 2017 WL 4773301, *1-*3 (E.D. Wis. Oct. 23, 2017) (rejecting contention patentee should be limited to only asserting exemplary claims pled in complaint, and collecting cases).

## II. THE COMPLAINT SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT

### A. The Complaint Sufficiently Pleaded Induced Infringement

Sharp says the complaint "does not plausibly allege an act of direct infringement by any third party." *See* Reply at 5. This is false, as Sharp concedes in its very next sentence. *Id.* (identifying end users as direct infringers and citing Dkt. 1 ¶ 96). Nor is there merit to Sharp's claim that the complaint makes "only conclusory allegations." *See* Reply at 5-6. In reality, the complaint pleads ***multiple factual theories*** of inducement, involving different groups of direct infringers. *Compare* Dkt. 1 ¶ 96 (end-users or customers), *with id.* ¶ 97 (affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on their or their affiliates' behalf). This is sufficient to plead a claim for induced infringement. *See, e.g.*, *CyWee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL 3819392, at *3 (E.D. Tex. Aug. 10, 2018) (Bryson, Cir. J.) ("[G]eneral allegations that customers . . . directly infringe the [asserted patents] by using, importing, marketing, selling, or offering for sale the accused products is sufficient to state a claim for induced infringement." (internal quotes omitted)).[5]

Sharp also suggests that the complaint must provide an element-by-element breakdown of how the direct infringers infringe. Reply at 5-6. But "the Federal Circuit has made clear [that] in the context of induced infringement a plaintiff is not required to 'plead facts establishing that each element of an asserted claim is met' and 'need not even identify which claims it asserts are being infringed.'" *CyWee Grp.*, 2018 WL 3819392, at *3 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).

B.  **The Complaint Sufficiently Pleaded Contributory Infringement**

For the first time on reply, Sharp argues that the complaint does not sufficiently plead "an absence of non-infringing uses." Reply at 6-7. This argument was not previously raised and so it is waived. *See, e.g.*, *Gillaspy*, 278 Fed. Appx. at 315. In addition, it is incorrect.

---

[5] *CyWee* does not stand, nor does Sharp provide any support, for the proposition that a plaintiff need attach or identify specific evidence (*e.g.*, specific "example[s] of instructions provided to customers," *see* Reply at 6) to its complaint, before the parties have even begun discovery.

6

Sharp asserts that American Patents must somehow prove a negative via its complaint—*i.e.*, that American Patents needed to plead all possible ways the accused products *cannot* be used. That is not the law. *See, e.g.*, *IOENGINE*, 2019 WL 330515, at *5 ("[T]o require the plaintiff to do more than to plead the absence of substantial non-infringing uses would require the plaintiff to plead a null set under the plausibility standard of *Twombly* and *Iqbal*—that it is impossible to plead with specificity something that does not exist." (internal quotations omitted)) (collecting cases). The complaint identifies special features of the accused products, pleads that the special features "constitute a material part of the invention," and "are specially designed to be used in an infringing way and [] have no substantial uses other than ones that infringe[.]" Dkt. 1 ¶ 98. That is more than the complaint in *Soverain Software LLC v. Oracle Corp.*, No. 6:12-cv-145, 2014 WL 12619817 (E.D. Tex. Mar. 21, 2014) (*see* Reply at 7). And it is sufficient to state a plausible claim for contributory infringement. *See, e.g.*, *IOENGINE*, 2019 WL 330515, at *5.

### C. The Complaint Plausibly Pleaded Pre-Suit Knowledge

Sharp repeats that the allegations of willful blindness are implausible, dismissing as "hearsay" the litany of cited publications showing that they are not just plausible—they are notorious. Reply at 7. But a core part of Sharp's attack on these allegations was that they were an "imagined conspiracy." Mtn. at 14. So American Patents showed publication after publication confirming that Sharp's alleged behavior was endemic to the tech industry. Ex. 2 [Lemley Article] at 21-22; Opp'n at 11-12 & n.5 (collecting articles). Sharp's reply is not to rebut the truth of the articles, but to protest that they are improper evidence.

American Patents cited those publications because the true thrust of Sharp's initial attack was not under Rule 12(b)(6). Rather, Sharp argued that the willfulness allegations were entirely made up. But as those publications show, American Patents has very good reason to believe that Sharp—as a large tech company—has a policy or practice of not reviewing others' patents,

7

including affirmatively instructing its employees to not review others' patents. American Patents has not yet had an opportunity to review Sharp's internal policies or depose any of its employees. Indeed, it is unclear how American Patents could ethically acquire the evidence Sharp seems to demand at this stage in the proceedings. Based on the information currently available, American Patents easily has a good-faith belief that discovery will likely reveal this allegation to have evidentiary support. Opp'n at 11; *see also* Rule 11(b)(3); *Script Security Solns. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016) (Bryson, Cir. J.). No more is needed at this point.

Sharp complains, though, that if the case against it stands, then the complaint "would suffice to plead pre-suit knowledge in every case against any large company[.]" Reply at 7. But the point of the pleading standard is to ensure claims are plausible, not to screen out otherwise plausible claims based on notorious, industry-wide activity. (And Sharp's insistence that this allegation could stand against "any large company" is overblown; the publications—and the complaint—address practices in the tech industry.) Sharp seems to think that, since it is widely accepted that virtually all major tech companies have a policy of being willfully blind to patents, it is somehow unfair that these companies could all be subject to an allegation of willful blindness. Sharp neither provides support for this "strength in numbers" theory, nor gives any reason why this Court should categorically exempt companies like it from such allegations.[6]

---

[6] Sharp also claims the allegations of pre-suit knowledge based upon Sharp's knowledge of its subsidiary's patent prosecution filings are implausible. Reply at 7-8. But unlike in *SoftView LLV v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027 (D. Del. Jul. 26, 2012), the complaint sets out more than just the bare fact of a parent/subsidiary relationship as the basis for imputing knowledge to Sharp. For instance, the complaint identifies specific employees who had knowledge through their dealings with the patent prosecution. Dkt. 1 ¶ 55. At the pleading stage, American Patents has plausibly alleged Sharp's pre-suit knowledge of the '304 patent. And to the extent the Court rules that this or any other claim is not adequately pleaded, American Patents renews its request for leave to amend its complaint to add additional factual allegations. *See* Opp'n at 15-16.

### III. THE COMPLAINT SUFFICIENTLY PLEADED WILLFULNESS

#### A. Egregiousness Is Not a Pleading Requirement for Willful Infringement

Sharp argues that *Script Security* is inapplicable because it was decided prior to *Halo*. Reply at 8-9. But Sharp fails to explain why it believes *Halo* changed the pleading standard in a way that makes *Script Security* inapplicable. And, in fact, *Halo* did not change the standard for subjective willfulness, which is what *Script Security* held that similar allegations established. *See, e.g.*, *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016).

Sharp's misreading of *Ericsson Inc. v. TCL Commn. Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *8 (E.D. Tex. May 10, 2018), and *Artic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017), likewise falls flat. Those cases addressed the elements of a willfulness claim—certainly something that's relevant to Sharp's motion to dismiss for failure to state a claim. And Sharp fails to cite a single case finding that egregious conduct is now part of the pleading standard. To the contrary, a number of courts have found otherwise. *See, e.g.*, *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018); *Valinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *6 (D. Del. May 29, 2018); *IOENGINE*, 2019 WL 330515, at *7 (collecting cases).

In addition, Sharp now argues for the first time that the Court should strike American Patents' prayer for enhanced damages. Reply at 9. This argument was not previously raised, so it is waived for being made for the first time on reply. *See, e.g., Gillaspy*, 278 Fed. Appx. at 315. But even were the Court to consider it, Sharp fails to offer any support for its position. Sharp cites *Cavallini v. State Farm. Mut. Auto Ins. Co.*, 44 F.3d 256, 259 n.8 (5th Cir. 1995), for the proposition that a prayer may be stricken. But that case did not strike a prayer. Instead, it merely noted the lower court's finding that the joinder of one defendant "was fraudulent and was done solely to defeat diversity" where the only mention of that defendant was in the prayer. *Id.* In any

9

event, because "the prayer for relief section is not a substantive part of the pleading," striking prayers for certain types of relief is not the proper subject of a motion to strike. *See, e.g.*, *Delano Farms Co. v. Cal. Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1183 (E.D. Cal. 2009).

### B. Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness

Sharp reasserts that willfulness cannot be based on allegations of post-filing knowledge. Reply at 9-10. Sharp rests on *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016). But *Opticurrent* itself recognizes that pre-suit knowledge is not categorically required to state a claim for willfulness. *See id.* at *2. And *Opticurrent*'s finding, that a plaintiff must move for a preliminary injunction to recover for willfulness based on post-filing conduct, is no longer good law after the Federal Circuit's decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 285 F. Supp. 3d 1013, 1026 (N.D. Cal. 2017). So even if American Patents had only alleged willfulness based on post-filing conduct, its allegations would still be allowed to stand.

In any case, American Patents did plead pre-suit knowledge, because willful blindness is sufficient to plausibly plead a claim for willfulness—as Sharp's own case confirms (*see* Reply at 10). *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018) ("In a willful infringement case, I believe willful blindness could similarly stand in to satisfy the defendant's knowledge requirement . . . ."); *see also* Opp'n at 15 (citing *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 2:15-cv-1274-JRG-RSP, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016)). *Ansell*'s finding, on summary judgment, that the evidence of willful blindness presented in that case did not justify a finding of egregious behavior, has nothing to do with whether American Patents' complaint adequately pleads a claim for willful infringement.

Dated: March 13, 2019 Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
The People's Petroleum Building
102 N College Ave., 13th Floor
Tyler, Texas 75702
(903) 593-7000

*Attorneys for American Patents LLC*